By the Court—Hoffman, J.
The propriety of the direction given by the Court, at the trial of this cause, depends upon the applicability of the rule laid down in Blake v. Ferris, (1 Seld., 48,) as the same is analyzed and explained in Storrs v. The City of Utica. (17 N. Y. R., 104.) We infer from these cases, and from those cited in the opinions therein, that, if the party sought to be charged had no direct participation in the act or default which caused the injury, if his immediate agents or servants had no such participation, and if the persons who caused such injury were the servants of another who possessed the whole selection, control and direction of them, that party cannot be rendered liable.
The question, whether the owner of real estate is liable, at all events, for injuries to third persons, happening through the negligence of those who may, for the time being, be in the charge thereof or engaged in making an erection thereon, we do not consider, with us, an open question. The opinion pronounced by Oakley, Oh. J., upon the merits of this case, after what has been pronounced a mistrial, (4 Duer, 423,) shows, we think, that the decisions of the Court of Appeals, as well as the Courts of *449 England, (if the principles propounded in the opinions delivered are to be adhered to,) forbid us to hold that the defendant here is liable as owner of the premises upon which the negligence occurred which caused the damage to the plaintiffs, irrespective of the questions whether the negligent parties were his servants, and whether there was any negligence or misconduct on the part of the defendant himself. Until the principle stated in Blake v. Ferris, (supra;) Stevens v. Armstrong (2 Seld., 435;) Pack v. The Mayor, (4 id., 222;) Kelly v. The Mayor, (1 Kern., 432,) and Storrs v. The City of Utica, (supra,) shall undergo some further modification, we must regard those questions as material, and the answers thereto as decisive in determining the liability.
As stated in the opinion of Chief Justice Oaklet, the liability of the owner of real estate for erecting or maintaining a nuisance upon his own land is not doubted; but we are forbidden to apply that principle to a case in which the owner has contracted for the erection of a suitable building in a proper manner, and with a person or persons of .competent skill, so that, if what is done is done according to the contract, no injury will happen to third parties, and he has no such notice of the omission or neglect of the contractors endangering others as requires him to interfere.
On these points, therefore, the opinion before given properly governs us on this appeal, if the facts proved on the trial bring the defendant within the rules there stated.
The defendant had contracted with Young & Yreeland, carpenters, and with sundry other mechanics, for the erection of the building in question. It is not denied or questioned, that the contracts made were with persons of proper skill, or that the contracts did not provide in all respects for a building which the defendant had a right to erect upon his own lot, and which would be safe and proper; or that the manner in which it was to be erected was not in all respects, safe, prudent and proper; or, in short, that, if all had been done in the manner in which the defendant contracted that it should be done, no nuisance would have been created, and no injury would have happened to the plaintiffs. If this be so, it seems necessarily to result that the only question before us is this: Is the defendant responsible for the manner in which the contractors perform their work, or for the negligence of the workmen in carrying it on? And, in considering this, it *450 is to be observed that the testimony is distinct and uncontradicted that Young & Yreeland, the carpenters, during that stage of the work in which the injury complained of occurred, had the custody and control of the building; their foreman had the keys, locked it at night, and opened it when he commenced work in the morning; .and that, although the defendant was at the building three or four times a week, he gave no directions.
The contract between the defendant and Young & Yreeland, so far as it is pertinent to the present question, called for “ a copper gutter of at least eight inches in diameter, put on the top of the rear wall, shaped so as to form the crown moulding of the cornice, well braced, and connected with the leader in a good manner; a five-inch double cross tin leader, with a square basin of twelve inches on the top to receive the water, running down to the basement, where to be connected with the main water-pipe running into the sewer p another copper gutter, of four inches diameter, to be'put on the first story rear extension wall, well braced .and made tight,, connected with a three and a half inch leader running through the rear wall into-the basement, where it is also to be connected with the main pipe.”
It is not questioned that the leaders so provided for were entirely sufficient- to conduct all the water from the defendant’s building into the- basement thereof, and that,, if the leaders had been brought down to that basement on the night of the storm, the injury to-the plaintiff’s goods could not have happened.
It is. quite clear that the terms of this contract with Young & Yreeland required that the leaders be brought down to the basement, with a view to their being there connected- with the main water-pipe.
But the leader from which, on the night in question-, the water flowed, causing damage, was-only brought down to within-about twelve or fifteen feet from the rear area, and from ten to- fifteen feet from the rear window of the counter cellar of the defendant’s store, and a temporary and insufficient arrangement was attempted by which to conduct the water from the lower end of this leader into the basement or counter cellar, which, if it had been successful, would have prevented the accident. A gutter, formed of boards nailed together, was placed at the end of the leader, and passed through the basement window and downward into the *451 cellar. But the prostration of this temporary gutter, by the force of the fall of water through the leader, left the water to flow to the pavement and thence to the rear'of the plaintiffs’ store, and was thus the immediate cause of the damage sustained by them. And this was owing to the insufficient manner in which the temporary gutter was secured, or to its inadequacy to carry off the water, and not at all to any inadequacy of the protection to the plaintiffs, if, in fact, the water had been conducted into-the defendant’s basement or counter cellar.
The immediate cause of the accident was therefore the fault and neglect of Young & Yreeland. First, in leaving the leader twelve or fifteen feet above the area instead of bringing it down to the basement as their contract required,, and second in- not suitably guarding it by of her means for- carrying off the water while it was left in that state. Had the leader been brought down to the basement, the water would have flowed into the defendant’s premises and there is no pretense that the plaintiffs could have been injured whether the water had remained in the defendant’s cellar or been led off to the sewer. Young & Yreeland had no right to so endanger the plaintiffs’’ property by not bringing down the leader to the basement, , as by their contract they were bound to do. The thing they had contracted to do, and which alone the defendant had authorized them to do, was safe and proper, and it was agreed to be done, and- alone authorized to be done, in a safe and proper manner. The defendant had given them the custody and control of the work, and he neither interfered with the manner of the performance nor had any control over their agents or servants in the management thereof.
The view, therefore, suggested above, recurs; the injury has happened, not by the defendant’s fault or neglect; not because he has done, or authorized to be done, anything which if done, and as authorized by him to be done, was injurious or dangerous, but because the servants or agents of the contractors were negligent in the manner of doing it, and contrary to the contract left a portion of the work over Sunday in such a condition as to cause the damage.
Unless, then, the views expressed upon the former hearing, and what are understood to be the principles of the cases above referred to, are to be rejected by us, the liability for this accident *452 rests on Young & Yreeland and not on the defendant, if the facts proved do not. furnish to them some excuse which shifts the responsibility.
An attempt was made to show such an excuse, and by reason thereof, to charge the defendant with default which would deprive him of the exoneration to which upon the grounds above suggested he would .be entitled. Proof was given tending to show that it was the duty of the defendant, as between him and Young & Yreeland, to put in the iron pipe which was to conduct .the water to the sewer in the street.
All that can properly be meant by this is that Young & Yree•land were not bound to put in the iron pipe, and therefore if the defendant wished to have the water conducted from his cellar to the street, he must provide for it. And it is not obvious that, if the defendant was willing that the water which was to be conducted into Ms cellar should remain there, Young & Yreeland would have any cause to complain of Mm if no iron pipe was furnished at all.
But it appeared that the defendant had contracted with one McKensie to put in 'the iron pipe, and it was claimed that he had improperly delayed Ms work and the pipe was not there on the night of the accident. It might be suggested that where two or more proper persons exercising their several independent employments are respectively employed to do the work of erecting and completing a building, the improper delay of one furnishes no excuse to another for leaving his own work in a condition dangerous or injurious to third persons, and therefore McKensie’s delay was no excuse to Young & Yreeland for the negligence of their servants in leaving the leader in question in the state and condition in which it was.
But a clear, and it seems to us a conclusive, answer to all this suggestion of excuse to Young & Yreeland, is that the neglect to put in the iron pipe into the cellar to-carry away the water, could not prevent or hinder Young & Yreeland in the doing of what they had contracted to do, viz.-: bring the leader down into the basement. As already stated, if the defendant did not in some manner provide for the removal of the water it might remain there, but that did not concern Young & Yreeland. The defendant had done nothing to .interfere with or modify his contract *453 with them; it was their duty to extend the one leader into the basement, and to conduct the other through the rear wall into the basement or cellar, and with the iron pipe or other means of carrying off the water they had nothing to do. Had they done what they agreed to do, and what alone the defendant authorized them to do, they would have continued the leaders into the basement and the accident could not have happened. We can say and must necessarily say, that the want of an iron pipe in the cellar was not, and as matter of law could not be, a reason for leaving the leader unfinished at a height of fifteen feet outside of the defendant’s building, so as to discharge water upon the area and upon the plaintiffs’ premises. In order to subject the defendant to liability founded on any omission to see that the iron pipe was introduced, it should be true that the leaders could not be brought down to the basement until the iron pipe was there, which not only is not true but the suggestion is so obviously absurd as not to warrant any doubt on the subject. The proposition is this: because an iron pipe has not been introduced into the cellar to carry off the water, therefore, Young & Vreeland could not extend the leaders down far enough to conduct the water into the cellar. It seems to us that there is not and cannot be any legal or necessary connection between the two things, and it might as well be said that the leader in the rear was left fifteen feet high because the vaults under the front sidewalk were not white-washed.
If the complaint had been that the water was not carried off from the cellar, or that the leader was not properly connected with an iron pipe or other conduit in the cellar, there would be some force in the suggestion that the defendant or McKensie was in fault, and that fault caused the accident. But not so: had the leader led down to the basement, the accident could not have happened. So far as the plaintiffs were concerned, all would have been safe. On this point, there is no conflict of evidence.
Being, therefore, wholly unable to see that, upon any legal view of the subject, the omission to-introduce an iron pipe into the cellar to carry off the water could possibly have caused the omission to extend the leaders down to the basement so that the water should flow into the cellar; and in the absence of any evidence that the defendant consented, in any manner, that Young *454 and Yreeland should not perform, their contract so to extend the leaders, or prevented their doing so, or altered or modified his contract with them in any particular; we do not perceive that there was any question to submit to the jury. The accident was caused, and wholly caused, by the neglect of Young and Yreeland, or their servants, to do that for which, the possession and control of the building was given to them by the defendant, and do it in a safe and proper manner.
The judgment should be affirmed.
Judgment affirmed.
The plaintiffs in the foregoing case appealed from the judgment .to the Court of Appeals, and the judgment of this Court was reversed. The questions involved are of such general interest, and have so often of late years been the subject of discussion, that it seems advisable to insert the opinion pronounced in that 'Court, with the statement of the views of the Judges, as furnished by the Reporter.
IN THE COURT OF APPEALS. BEACH.
Clerke, J.
Undoubtedly, whenever injury to the person or ■property of any one arises from a nuisance in the building or .land of another, the owner is responsible for the damage. And this is so, not only where he has demised the property to another with the nuisance upon it and reserved a rent, but where the erection was made by another upon his land, and where he has no right to enter for the purpose of removing it. This was decided in Bush v. Steinman, (1 B. & P., 404,) where the owner .of a house, who had contracted with a surveyor to put it into ■repair for a stipulated sum, was held answerable to a third person who had suffered an injury in consequence of the improper act of one of the workmen in making the repairs, although the work■man was neither his servant nor under the control of the owner *455 of the house. It is expressly held, in The Mayor, &c., of New York v. Bailey et al., (2 Denio, 433,) that the owner of real estate is responsible for the negligent acts of persons employed in making erections upon it for his benefit, though the relation of master and servant does not exist between the owner and the person so employed.
The former case, however, has been seriously questioned, if not overruled, in the English Courts; and both, I think, are entirely at variance with the principle adopted by this Court in Blake v. Ferris, (1 Seld., 48,) and the cases quoted by the Judge who delivered the opinion of the Court. That principle is, that unless the relation of master and servant exists between the party charged and the person who has done the injury, the act of the latter creates no liability in the other. I cannot conceive that it makes any difference, when the injury happens to have been committed on the premises of a person sought to be charged, if he had no direct agency in the commission of it, or has not sanctioned it in any way. If the person doing the injury is not his servant, but the servant of another, there is no better reason why the latter should be relieved from the responsibility than if the injury was committed in the street. It is the act of a person done in the course of his employment, and he is bound to obey his own master and not the employer of his master: otherwise, if a man, employed by a contractor in erecting a building, carelessly lets a brick fall on the head of a person passing by, the owner of the building is liable, and not the contractor. This, I think, could never be held; and yet it would be the legitimate consequence of the position that a man is answerable for every damage which arises from any injurious act committed on his premises.
But, in the present case, some evidence was introduced at the trial at least tending to show that the defendant himself undertook to furnish the iron pipe to be connected with the tin pipe, and that the accident would not have occurred if it had been furnished in time. It was no excuse for the defendant to say that he had contracted for the iron pipe with McKensie, who delayed the work. McKensie is not answerable to the plaintiffs for this delay; and it was the defendant’s duty either to procure one from some one else, or to make some temporary arrangement which would protect the plaintiffs from damage. If he modified the *456 contract with Young & VreelancL to this extent, -he should not have left it to their foreman to fix the wooden trough, which he did so imperfectly as to cause the injury.
I think, therefore, that the Judge erred at the trial.
Comstock, Oh. J., Seldeh and Wright, Js., (if not others,) dissented from that part of the preceding opinion which denies the liability of the defendant, on the broad ground of his ownership of the premises; but all the Judges concurred that the judgment must be reversed, on the special ground stated by Clerks, J., in the last paragraph of the preceding opinion.
(Copy.) E. PESHINE SMITH, State Reporter.