Charles Eaton, by his Guardian, etc., Respondent, v. The Delaware, Lackawanna and Western Railroad Company, Appellant.

Railroad companies have the right to make a complete separation between their freight and passenger business. Where this is done the conductor of a freight train has such general authority only as is incidental to the business of moving freight, and no power whatever as to the transportation of passengers; and notice of this limited authority will be implied from the nature and apparent division of the business.

The presumption is that a stranger riding upon a freight train is not legally a passenger, and is not lawfully upon the train; and no liability for negligence can be imposed upon the company as to him, unless the special circumstances of the case rebut this presumption.

Plaintiff was invited by the conductor of a coal train upon defendant's road to ride upon the train with a promise to get him employment as a brakeman. No passenger car was attached to the train, but, aside from the coal cars, simply a "caboose" for the carriage of train implements and the accommodation of defendant's employes, in which plaintiff was invited to and did ride. Through the negligence of defendant's employes the train was run into by another and plaintiff injured. In an action to recover damages it appeared that, by a regulation of defendant, printed for the use of employes, passengers were forbidden to ride on coal trains; of this plaintiff had no actual notice. It did not appear that passengers were either habitually or occasionally permitted to ride in the caboose. The court instructed the jury, in substance, that if plaintiff was upon the train with the assent of the conductor and without being informed of the regulation, then defendant was liable. *Held* (Earl, C., dissenting), error; that there was nothing in the attendant circumstances indicating an apparent authority in the conductor to create between the parties the relation of passenger and carrier, or to make an arrangement for plaintiff's employment as a brakeman; and that the facts did not establish that plaintiff was lawfully upon the train.

*Dunn* v. *G. T. R. Co.* (58 Me., 187; 10 Am. L. R. [N. S.], 623) questioned and distinguished.

(Argued January 14, 1874; decided May term, 1874.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment in favor of the plaintiff, entered upon a verdict, and affirming an order denying a motion for a new trial.

This action was to recover damages for injuries sustained by the plaintiff by a collision upon defendant's road.

The material facts are as follows: In April, 1869, the plaintiff, with two other young men, was walking along the track of defendant's road, toward New York; a coal train came along with a large number of coal cars; there was a caboose at the end of the train, with accommodations for the employes of the road and their tools and implements. As the train was passing slowly the conductor came to the back end of the caboose and beckoned to the young men to get on. They got on and entered the caboose, being then about fifty miles from New York. After they had been in the caboose for a short time, the conductor came to them and said that the railroad company was in want of brakemen, and that if they would return with him to Phillipsburgh he would endeavor to procure situations for them as brakemen. They consented; and when that train reached its destination the conductor told them to remain in the caboose. This they did; and in a short time this caboose and a train, under the charge of the same conductor, started upon the return toward Phillipsburgh ; and, when it reached Waterloo station, it was stopped upon the main track. The conductor knew another train was following, and that it was his duty to send a flagman back with a red light; but he neglected to do so. The flagman was asleep in the caboose, and no signal was given or light displayed. The following train came up rapidly, and ran into the caboose, breaking it in pieces and severely injuring plaintiff. There was a printed regulation of the railroad company, for the use of its employes, forbidding passengers to ride upon coal trains; but of this regulation plaintiff had no actual notice. No evidence was given tending to show that persons not in defendant's employ, either habitually or at any other occasion, save this, were allowed to ride in the " caboose."

The court charged, in substance, that if plaintiff was on the train with the conductor's assent, in ignorance of the

regulation of the company, then, the company was liable, and that the question turned upon the fact whether this regulation was, in point of fact, communicated to plaintiff. To which defendant's counsel duly excepted.

*Hamilton Odell* for the appellant. Plaintiff was not, in any legal sense, a passenger on defendant's road. (S. & R. on Neg., § 262; 2 Bouv. Dict., 297; *Buffett* v. *T. and B. R. R. Co.*, 40 N. Y., 171; *U. P. R. Co.* v. *Nichols*, 11 Am. L. Reg. [N. S.], 35; *P. and R. R. R. Co.* v. *Derby*, 11 How. [U. S.], 468; *Nolton* v. *West. R. R. Co.*, 15 N. Y., 449; *Bissell* v. *M. S. R. R. Co.*, 22 id., 307; *Todd* v. *O. C. Co.*, 3 Al., 18; *G. N. R. Co.* v. *Harrison*, 26 Eng. L. and E., 443; *New World* v. *King*, 16 How. [U. S.], 469.) Defendant had a right to prohibit carrying passengers on its coal trains. (*Nicholson* v. *Erie R. Co.*, 41 N. Y., 530; *Thurman* v. *Wells*, 18 Barb., 516; *Beckman* v. *Shause*, 5 Rawle, 187; *Elkins* v. *B. and M. R. R. Co.*, 23 N. H., 275; *Sewall* v. *Allen*, 6 Wend., 335, 350, 360; *City Bk.* v. *N. Stbt. Co.*, 3 Story, 33; *Lygo* v. *Newbold*, 9 Exch., 302.) A master is only chargeable with the acts of his servant when he acts within the execution of the authority the master gave him. (*Condit* v. *Baldwin*, 21 N. Y., 222; *Aycrigg* v. *N. Y. and E. Co.*, 1 Vroom, 460; *Nixon* v. *Palmer*, 8 N. Y., 398; *Bush* v. *Cole*, 28 id., 269; *Satterlee* v. *Groat*, 1 Wend., 273; *Lygo* v. *Newbold*, 9 Exch., 302; *Mussey* v. *Buchvi*, 3 Cush., 517; Esp. Dig., 622; *Reynolds* v. *Tappan*, 15 Mass., 370.) A special agent with limited powers cannot bind his principal beyond the precise limits of his authority. (*Lightbody* v. *N. A. Ins. Co.*, 23 Wend., 23; *Rossiter* v. *Rossiter*, 8 id., 494; *Scott* v. *McGrath*, 7 Barb., 53; *Stephenson* v. *Har. R. R. Co.*, 2 Duer, 341; *Mali* v. *Lord*, 39 N. Y., 381; *Munn* v. *Comm. Co.*, 15 J. R., 43; *Beals* v. *Allen*, 18 id., 363; *Andrews* v. *Kneeland*, 6 Cow., 354; *Wilson* v. *Gen. Ins. Co.*, 14 N. Y., 418; *Adriance* v. *Roome*, 52 Barb., 399; *Thames Co.* v. *Hous. Co.*, 24 Conn., 40.) The conductor of the coal train was only defendant's servant for a special purpose.

(*Stow* v. *Wyse*, 7 Conn., 219; *New World* v. *King*, 16 How. [U. S.], 469; Abb. on Ship., 124, 125, marg.; *City Bk.* v. *Nav. Co.*, 2 Story, 46; *Reynolds* v. *Tappan*, 15 Mass., 370; *Walter* v. *Brewer*, 11 id., 99; *Haack* v. *Fearing*, 35 How., 459; *Satterlee* v. *Groat*, 1 Wend., 572; *Merritt* v. *Walsh*, 32 N. Y., 685; *Johnson* v. *Concord Co.*, 46 N. H., 213; *Thurman* v. *Wells*, 18 Barb., 516.) The conductor being a special agent plaintiff acted at his own peril, and was bound to inquire into the nature and extent of his authority. (Story on Ag., § 133; *Snow* v. *Perry*, 9 Pick., 542; *Fisher* v. *Campbell*, 9 Porter, 210; *Schimmelpennich* v. *Bayard*, 1 Pet., 290; *Thurman* v. *Wells*, 18 Barb., 518, 519; *Sage* v. *Sherman*, Lalor's Sup., 150; *Adriance* v. *Roome*, 52 Barb., 399; *Dabney* v. *Stivens*, 46 How., 346; *Johnson* v. *Concord Co.*, 46 N. H., 213, 220.) The fact that plaintiff did not pay fare is material. (*Robertson* v. *Erie Co.*, 22 Barb., 91.) Plaintiff was on defendant's train without its consent; it owed him no duty, and was guilty of no negligence toward him. (*Wilkinson* v. *Fairril*, 32 L. J., 73; *Zoebisch* v. *Tarbell*, 10 Al., 385; *Cox* v. *Market Co.*, 9 Am. L. Reg. [N. S.], 103; *Gillis* v. *Pa. R. R. Co.*, 8 id., 729; *Barker* v. *N. Y. C. R. R. Co.*, 24 N. Y., 599; *Nicholson* v. *Erie R. Co.*, 41 id., 330; *Munger* v. *Ton. Co.*, 4 id., 349; *Roulston* v. *Clark*, 3 E. D. S., 366; *Terry* v. *N. Y. C. Co.*, 22 Barb., 574; *Blythe* v. *Topham*, Cro. Jac., 158; *Howland* v. *Vincent*, 10 Met., 371; *Bush* v. *Brainerd*, 1 Cow., 78; *Carroll* v. *N. H. Co.*, 1 Duer, 571; 5 Den., 267; 22 Barb., 574; *Morse* v. *A. and S. Co.*, 10 id., 621.)

*Frederic A. Ward* for the respondent. Plaintiff was lawfully upon defendant's train, and it was its duty to transport him with due care and skill. (*Edgerton* v. *N. Y. and H. R. R. Co.*, 39 N. Y., 227; *Nolton* v. *West. R. R. Co.*, 15 id., 447, 449; *Bissell* v. *M. S. R. R. Co.*, 22 id., 307; *Perkins* v. *N. Y. C. R. R. Co.*, 24 id., 200; *Nicholson* v. *Erie R. Co.*, 41 id., 525; *Coggs* v. *Bernard*, Ld. Ray., 909.) The fact that plaintiff was riding gratuitously does not alter the case.

(*Wells* v. *N. Y. C. R. R. Co.*, 24 N. Y., 193 ; *P. and R. R. R. Co.* v. *Derby*, 14 How. [U. S.], 468 ; *Lovett* v. *Salem R. R. Co.*, 9 Al., 557 ; *Thomas* v. *Winchester*, 2 Seld., 401, 404, 409 ; *Perkins* v. *N. Y. C. R. R. Co.*, 24 N. Y., 200 ; *Nolton* v. *West. R. R. Co.*, 15 id., 444.) Had plaintiff been a tres- passer he would have had a right to be protected from a reckless exposure of his life to danger. (*Sawyer* v. *Jackson*, 5 N. Y. L. O., 380 ; *Johnson* v. *Patterson*, 14 Conn., 1 ; *Paige* v. *Gardiner*, 19 id., 507 ; *Bird* v. *Holbrook*, 4 Bing., 628 ; *Lynch* v. *Hardin*, 1 Ad. & E. [N. S.], 30 ; *Daly* v. *N. and W. R. R. Co.*, 26 Conn., 591 ; *Thomas* v. *Winchester*, 2 Seld., 401.) The conductor of a train of cars is invested with general authority and discretion, and his acts bind his employers. (*Clark* v. *Eighth Ave. R. R. Co.*, 36 N. Y., 135 ; *Carroll* v. *N. Y. and N. H. R. R. Co.*, 1 Duer, 580 ; *Stbt. New World* v. *King*, 16 How., 469.) The acts of the con- ductor were merely negligent, and for such acts an employer is always liable. (*Isaacs* v. *Third Ave. R. R. Co.*, 47 N. Y., 126 ; *Lack. R. R. Co.* v. *Chenewith*, 52 Penn., 383 ; *Weed* v. *Pan. R. R. Co.*, 17 N. Y., 368 ; *Sanford* v. *Eighth Ave. R. R. Co.*, 23 id., 346 ; *P. and R. R. R. Co:* v. *Derby*, 14 How., 468 ; *Carrol* v. *N. Y. and N. H. R. R. Co.*, 1 Duer, 580 ; *Spooner* v. *Bklyn. City R. R. Co.*, September, 1873.) Defendant's regulation prohibiting passengers from riding on coal trains not having been communicated to plaintiff is no defence. (*L. and M. R. R. Co.* v. *Montgomery*, 7 Ind., 476 ; *Zemp* v. *W. and M. R. R. Co.*, 9 Rich. [S. O.], 84 ; *Perkins* v. *N. Y. C. R. R. Co.*, 24 N. Y., 201 ; *Clark* v. *Eighth Ave. R. R. Co.*, 36 id., 135 ; *Penn. R. R. Co.* v. *McCloskey*, 23 Penn., 532 ; *Carrol* v. *N. Y. and N. H. R. R. Co.*, 1 Duer, 579 ; *P. and R. R. R. Co.* v. *Derby*, 14 How., 468 ; *Sleath* v. *Wilson*, 9 O. & P., 607 ; *Hadencamp* v. *Second Ave. R. R. Co.*, 1 Swe., 500 ; *Dunn* v. *G. T. R. Co.*, 58 Me., 187 ; Shear. on Neg., 324 ; 19 Wend., 234.)

DWIGHT, C.  The real inquiry in the present action is, whether, under the circumstances of the case, the relation of

common carrier and passenger existed between the plaintiff and defendant. If that can be established, it is plain that the negligence of the conductor was such as to make the defendant liable for the plaintiff's injuries. It must, however, appear that the defendant was under a duty to the plaintiff to exercise care toward him. That duty can only spring up from acts of the conductor causing the relation of common carrier and passenger to exist between the parties. It is now well settled that liability in such cases is to be derived from a pre-existing duty or obligation on the part of the principal. In that case the negligence of the servant whom he employs to discharge the duty or obligation is imputable to himself, so as to render him responsible. (*Smith* v. *Dock Company*, L. R. [3 C. P.], 326; *Collis* v. *Selden*, id., 495; *Nicholson* v. *Erie Railway Company*, 41 N. Y., 525, and cases cited in opinion of EARL, Ch. J.)

The solution of the questions at issue is not to be sought in the rules of law appertaining to common carriers. It must be obtained from the principles of the law of agency. The true inquiry is, whether the conductor, as an agent of the defendant, had the power to take the plaintiff upon the train in such a way as to bind the defendant as a carrier to him as a passenger. The facts of the case, so far as it is necessary to consider them, are briefly these; they are stated in the form most favorable to the plaintiff: He, being then under twenty-one years of age was, with two other boys, walking toward his home on the railroad track, and, having been passed by a coal train, moving slowly, was beckoned by the conductor in charge of it, who was then on the rear car, a caboose (to be hereafter described), to get upon the train. The plaintiff and his associates acted accordingly. The conductor, afterward, solicited them to go with him, upon his return trip, to a place called Phillipsburgh, where he would procure for them situations as brakemen. They went with him. The train, toward morning, stopped on the track at a point where there was a sharp curve in the road. The conductor was guilty of negligence, in not sending back a flagman, to warn an

approaching train.   No signal was given, nor was any 'light exposed for this purpose.   A collision occurred, by which the plaintiff sustained serious injury, without negligence on his part.   The rear car, or "caboose," in which the plaintiff was at the time of the injury, was supplied with a stove, and there were boxes running up and down the car, in which the tools, etc., of the employes of the road were kept.   The car was also used as a place of deposit for lanterns, couplings, etc. The boxes had covers on which persons could sit.   The car was, in substance, ·a store-room, and used for carrying provisions while the train was on the road.   These arrangements were made for the convenience of the defendant's servants, and the car, really, carried train equipments.   There was no evidence that passengers, either habitually or occasionally (except in the present instance), rode in the caboose.   There was a regulation of the defendant, printed on the tables intended for the use of its employes, that passengers were forbidden to ride on coal trains.   Disobedience of this rule, if known to the defendant, was followed by a discharge of the employe so offending.   Of this regulation the plaintiff had no actual notice, and it was not put up in the "caboose." The plaintiff paid no fare, nor was any demanded of him. The question submitted to the jury at the trial was, whether the plaintiff was informed of the regulation referred to; and they were instructed, that if they should answer that in the negative, the plaintiff could recover.   To this direction exception was taken by the defendant.

In considering the effect of these facts, it should be premised that railroad companies, like other common carriers, have a right to make reasonable regulations as to the management of their business.   While they may, if they see fit, have the freight and passenger business carried on upon a single train, under one management, they may also completely separate their transactions by arranging them in distinct departments.   They may thus have an engineer, brakemen and a conductor, whose duties shall be confined solely to the management of a freight train.   Such a conductor, though

bearing the same name as the general manager of a passenger train, would have quite different powers. The law would, in general, only confer upon him such authority as was incidental to the business of moving freight; and no power whatever as to the transportation of passengers. This would clearly be the case if a person applying to be a passenger on a freight train had actual notice of the division of the business. In the great transactions of commercial corporations, convenience requires a subdivision of their operations among many different agents. Each of these may have a distinct employment, and become a general agent in his particular department, with no powers beyond it. He is only identified with the principal to that extent. Notice to such an agent would only be notice to the principal in respect to the department in which he acted. (1 Parsons on Contracts, 76 [5th ed.]; see Story on Agency, §§ 17, 167, where the distinction between a strict general agent and one for a particular purpose is considered; see § 131 as to his powers; also, 1 Parsons on Contracts, 76.) These general propositions will scarcely be disputed.

The remaining inquiry is, whether notice to a supposed passenger will not be implied from the nature and apparent division of the business. It would seem so. The matter will be simplified by supposing, in the outset of the discussion, that this had been a coal train without any "caboose" attached. Under such circumstances, although a wayfarer had taken a gratuitous ride, with the conductor's assent, upon one of the coal vans, happening for the moment to be empty, so that he could improvise a seat, he could scarcely be deemed a passenger, and the defendant, as to him, a carrier. The presumption is that a person on a freight train is not, legally, a passenger; and it lies with him who claims to be one, to take the burden of proof to show that, under the special circumstances of the case, the presumption has been rebutted. So, if a stagecoach proprietor should regularly carry his passengers in a stage and their baggage in a wagon, there would be a fair presumption that the wagon was not intended for passengers,

though, under special circumstances, it might be used in that manner. A person asserting that he was a passenger, though riding in the baggage-wagon, would be bound to prove it. In both these cases, the distinction between the passenger and the freight business would be so marked by the external signs of classification, that any person of ordinary prudence would take notice of it. This would be equivalent to actual notice, and the burden of proof would devolve upon him to show that the carrier had relaxed his rule. (*Robertson* v. *New York and Erie Railroad Co.*, 22 Barb., 91.)

The question now recurs, whether there is anything in the facts of the present case to rebut the presumption which would naturally be derived from the separation of the defendant's coal business from its other transactions. If so, it must be in the authority of the conductor, as a general agent of the defendant, or in the appearance of the caboose as fitted up for the transportation of passengers, or, in the conductor's invitation or suggestion, as to the plaintiff's employment as a brakeman. It is a fallacy to argue that a conductor is a general agent for this purpose, assuming that his power would, as a rule, place him under the class of general agents; he only holds that position for the *management of a freight train*. The fact that the same word, "conductor," is used to designate servants in two kinds of business, which the defendant has made perfectly distinct, tends to confusion. There is no real analogy between the duties of a conductor of a passenger train and those of the manager of a strict freight train. A different class of men would naturally be employed in the two cases. The defendant has a right to assign specific duties to the one distinct from those performed by the other. It is a familiar rule in such a case, that an agent cannot increase his powers by his own acts; they must always be included in the acts or conduct of the principal. (*Marvin* v. *Wilber*, 52 N. Y., 270, 273.) No act of a conductor of a freight train will bind the company as to carrying passengers, unless the principal in some way assents to it. In the present case, it was distinctly proved that the

company forbade the act, and there was no evidence of any form of assent to its exercise, except that which may be inferred from the use of the caboose.

The caboose was not fitted up in the manner usual in passenger cars. Its general appearance showed it to be exclusively designed for the use of the defendant's servants. The plaintiff could not have been misled as he paid no fare. The conclusion is, that there was nothing in the attendant circumstances, in the present instance, to show that the conductor could, by inviting the plaintiff to get upon the train, create between him and the defendant the relation of passenger and carrier.

The result is supported by the adjudged cases. In *Lygo* v. *Newbold* (9 Exch., 302) the plaintiff contracted with the defendant to carry certain goods for her in his cart. The defendant sent his servant, who, without the defendant's authority, permitted the plaintiff to ride in the cart. On the way, the cart broke and the plaintiff was injured. It was held that the defendant had not contracted with the plaintiff to carry her, and that he was not liable. The Supreme Court of Maine have sought to weaken the force of this case by the assertion that it was not the case of a common carrier. (*Dunn* v. *Grand Trunk Railway Co.*, 58 Me., 187; 10 Amer. Law Reg. [N. S.], 623.) The criticism seems to be unfounded, as the question here at issue does not respect the duties of a common carrier to a passenger, but is the preliminary one, whether the plaintiff is a passenger. This depends upon the law of agency, and to this the decision in *Lygo* v. *Newbold* is strictly applicable. *Elkins* v. *B. and M. R. R. Co.* (23 N. H. 275) is favorable to the defendant. The railway company in that case had a regulation prohibiting the carriage of freight on passenger trains. It was held, that as it had not authorized or acquiesced in any deviation from the regulation, and had received no compensation for the carriage of the goods, it was not liable. Reference may also be made to the authorities establishing the proposition, that wherever an agent has powers over a definite subject he cannot by his own act extend

his powers to other subjects, even of a cognate character. Notice to the person dealing with him is immaterial. (*Benedict* v. *Martin*, 36 Barb., 288; *Gilbert* v. *Beach*, 5 Bosw., 445; 8 N. Y., 222; 11 id., 432.) The case of *Lawrenceburgh and Miss. R. R. Co.* v. *Montgomery* (7 Ind. [Port.], 476) is not opposed to these views. The only point bearing on the present subject was, whether the court below erred in not instructing the jury that a railroad company is not liable for an injury which may happen to a person who takes passage on a train engaged in transporting gravel and not engaged in carrying passengers. The court properly held that the request for this instruction was too broad. It added: "In the case of *Fitzpatrick* v. *New Albany and Salem R. R. Co.* (id., 436) we decided that a person riding on a gravel train might, under certain circumstances, recover for an injury occasioned by a collision. Besides, the last qualification of the proposed instruction was calculated to mislead the jury, as it appeared that the company had carried passengers in gravel trains in a number of instances." (P. 477.) This decision, owing to the special grounds upon which it was placed, has no bearing on the present case, the facts being materially different. The case of *Dunn* v. *The Grand Trunk Railway Co.* (*supra*), in its precise facts, is not opposed to the theory adopted in the case at bar. The plaintiff had paid his fare and entered the "saloon" car of a freight train, contrary to the regulations of the company, but with the knowledge of the conductor. The company was held liable. The case differs from the one at bar in two respects: payment of fare and the attachment of a "saloon car." What that was is not precisely stated. It may be assumed to be one fitted up for the accommodation of passengers. It might thus, perhaps, be inferred that the defendant had assented to a relaxation of its rules. The reasoning of the case is disapproved by a well known text writer upon railways (Judge Redfield), and is unsatisfactory. The principle there acted upon is not to be extended beyond the precise facts of the case.

The only other point to be considered is whether the suggestion of the conductor that the plaintiff might secure employment as a brakeman if he would go with him to Phillipsburgh, is of such a character as to impose a liability upon the defendant. The same general course of reasoning already resorted to is applicable. The employment of brakemen is no part of the ordinary duty of a conductor. The company gave him no power to make any arrangement of the kind. Even if his suggestions had been influential in former cases, the plaintiff had not acted upon that fact. The defendant had not held him out as having authority. The testimony on this branch of the case, most favorable to the plaintiff, is that the conductor told the plaintiff that if he wanted work and would go back to Phillipsburgh he was sure of a situation, or that he would get him a situation, and promised that he should be a brakeman on the road. It appeared, however, that the conductor had no authority to employ brakemen, this part of the business being intrusted to an employe termed a " train dispatcher." Looking at this testimony in the most favorable light it is only an instance of an agent having defined authority, making representations beyond the scope of his agency. It is not one of those cases where he has an apparent authority, including the act in question, but owing to a secret fact does not have it in the particular case. (*North River Bank* v. *Aymar*, 3 Hill, 262; *Farmers and Mechanics' Bank* v. *Butchers and Drovers' Bank*, 16 N. Y., 125, 128, 143; *Witbeck* v. *Schuyler*, 44 Barb., 469; *N. Y. and N. H. R. R. Co.* v. *Schuyler*, 34 N. Y., 30; *Rawls* v. *Deshler*, 3 Keyes, 572.)

On the other hand there is nothing in the business of a conductor which could lead to the conclusion that he had authority to make contracts with persons to act as brakemen. His apparent duties are to carry forward a train after it is organized. The business of organizing it is, in its nature, wholly distinct. It is, in fact, committed to a " train dispatcher." Under such circumstances there is no act on the part of the defendant by which he can be estopped from showing

the conductor's real authority any more than a commercial house would be if one of its travelers, in the course of a journey, assumed to hire a clerk to do business for his employers at home.    Suppose that such a person, while driving his employer's carriage in the course of his business, had taken up a person casually met on the highway in whom he became interested and to whom he had promised employment as a clerk with the intention of carrying him to such employer, would the employer be liable for the negligent driving of his traveler whereby the promisee was injured ?    The contention of the plaintiff must go to the length of maintaining that the company was bound by the act of the conductor to take the plaintiff into its service.    If he had reached his destination without injury and received no employment he would, on the principle asserted in this case, have an action against the defendant for not supplying him with work.    The conductor's authority to carry can only be incidental to his power to make a valid engagement for the plaintiff's services.    The admission of such a doctrine would subvert familiar rules of the law of agency.    It cannot be that it is law.    (*Cochran* v. *Newton*, 5 Den., 482 ; *Stringham* v. *St. Nicholas Ins. Co.*, 3 Keyes, 280.)

But it is said that by the act of the conductor the plaintiff was *lawfully* on the train, and that for this reason the defendant was liable to him for the negligence of its servants.    With due submission this is simply begging the question.    The plaintiff could only be "lawfully" on the train by an authorized act of the conductor.    The question still recurs, had the conductor the authority to take the plaintiff on the train ?    If not, he could not *lawfully* be there. It is not necessary to consider whether he was a trespasser. It is enough to hold that a duty to be careful toward him could only spring up, on the part of the defendant, by an act on the conductor's part coming within the scope of his authority.    It has already been abundantly shown that there was no such act.

The judgment should be reversed.

EARL, C. (dissenting).   In the view I take of this case it is
not necessary to determine whether the plaintiff was strictly a
passenger upon defendant's road, or whether in that character
he can maintain this action.   It is important only, to determine
whether he was lawfully there, and if he was he was entitled
to protection against the defendant's willful or negligent acts.
That he was lawfully there, I think, cannot be doubted.
The conductor had charge of the train and invited him to get
on.   He informed him that the defendant was in want of
brakemen, and invited him to ride back with him with a view
to employment in that capacity.   The plaintiff had no reason
to suppose that the conductor was doing an unlawful or
unauthorized act in extending this invitation for the purpose
mentioned, or that he was a trespasser or wrong-doer in
accepting it.   I think no authority can be found holding that
a person, under such circumstances, is unlawfully or wrong-
fully upon a train; but there are numerous authorities in this
and other States holding otherwise.   This being so, there is
abundant authority for holding that he was entitled to pro-
tection against the willful or negligent acts of the defendant
or its agents.   In the case of *Lackawanna and Bloomsburgh
Railroad Co.* v. *Chenewith* (52 Penn., 382), at the request of
the owner of a freight car, the agents of a railroad company
attached his car to a passenger train, contrary to the rules
and instructions of the company, and it was held that the car
was not unlawfully on the road, and that the owner was enti-
tled to compensation for injury from negligence to which the
attaching his car did not contribute.   In *Philadelphia and
Reading Railroad Co.* v. *Derby* (14 How. [U. S.], 468) the
plaintiff below was the president of another railroad company
and a stockholder in the defendant, and he was invited by
the president of the defendant to ride with him, not in the
usual passenger cars, but in a small locomotive car used for
the convenience of the officers of the company; and he paid
no fare for his transportation.   It was held that he was law-
fully in the car, and that he could recover damages for inju-
ries received by a negligent collision.   It is said in the opin-

ion of the court: "If one be lawfully on the street or high-
way, and another's servant carelessly drives a stage or car-
riage against him and injures his property or person, it is no
answer to an action against the master, for such injury, either
that the plaintiff was riding for pleasure, or that he was a
stockholder in the road, or that he had not paid his toll, or
that he was the guest of the defendant, or riding in a car-
riage borrowed from him, or that the defendant was the
friend, benefactor or brother of the plaintiff. These argu-
ments, arising from the social or domestic relations of life,
may in some cases successfully appeal to the feelings of the
plaintiff, but will usually have little effect when the defend-
ant is a corporation which is, itself, incapable of such rela-
tions or the reciprocations of such feelings. In this view of
the case, if the plaintiff was lawfully on the road at the time
of the collision, the court were right in instructing the jury
that none of the antecedent circumstances or accidents of his
situation could affect his right to recover." In *Carroll* v.
*New York and New Haven Railroad Co.* (1 Duer, 571) a
passenger was riding in a baggage car, and although he would
not have been injured if he had been in a passenger car, yet,
as he took his place in the baggage car with the assent of the
conductor, it was held that he was lawfully there, that he was
not a trespasser or wrong-doer, and that he could recover for
injuries received in consequence of a collision. In *Tona-
wanda Railroad Co.* v. *Munger* (5 Denio, 255) and *Munger*
v. *Tonawanda Railroad Co.* (4 N. Y., 349) the action was
to recover for two oxen killed upon the railroad by a passing
train; and it was held that no recovery could be had because
the oxen were unlawfully upon the railroad. If they had
been lawfully there, no matter how they came there, the
owner could have recovered, by showing negligence on the
part of the railroad company. In *Robertson* v. *The New
York and Erie Railroad Co.* (22 Barb., 91) the plaintiff was
badly injured, while riding upon the engine, by reason of the
negligence of the defendant. The plaintiff had no right to
ride upon the engine and he knew it. It was held that he

could not recover because he was unlawfully on the engine; and he was nonsuited. But it is said, in the opinion of the court, that if he had been lawfully there he could not have been properly nonsuited. In *Corrigan* v. *Union Sugar Refinery* (98 Mass., 577) defendant's servant carelessly threw a keg out of a window, which hit and injured the plaintiff, who was in a passage-way below; and it was held that the plaintiff being there lawfully, could recover. In *Driscoll* v. *Newark and Rosendale, etc., Co.* (37 N. Y., 637) the intestate was lawfully in the vicinity of a place where the defendant's servants were engaged in blasting rock, and he was killed by a stone, thrown upon him by a blast discharged without giving any warning. The plaintiff recovered, upon the ground that there was a negligent act on the part of the defendant causing the death of the intestate, while he was lawfully in the vicinity of the blast. This whole doctrine, in the aspect in which I am now considering it, received considerable attention in the case of *Nicholson* v. *The Erie Railway Co.* (41 N. Y., 525). In that case the intestate was lawfully upon the defendant's track, crossing it, on his own business, by implied permission of the defendant. He was struck and killed by a car, which was set running by the force of the wind, the car not having been blocked or in any way fastened. It was held that the defendant was not liable, because it did not owe to the intestate the active duty of making its track safe for his crossing, and because no negligent act of the defendant had caused or contributed to the accident. But the decision of that case would, manifestly, have been otherwise, if any negligent act of the defendant had caused or contributed to the accident — as if its servants had negligently run the car against the intestate.

It will thus be seen that there is a general rule that, wherever a person or his property may lawfully be, he is entitled to protection against the negligent acts of another causing him injury or damage. If one be unlawfully in any place, and be injured in consequence of being there, by the carelessness of another, he is, generally, without remedy, because

his own wrong contributed to the injury. But if one be lawfully upon a highway, upon a railroad, or in a railroad car, and while there, *without* any contributory negligence on his part, he be injured by the negligent act of another, he has his remedy for the injury. So, in this case, it matters not how the plaintiff came where he was at the time of the injury, or whether he was in the caboose or upon the railroad track, or whether he was strictly a passenger and entitled to care and protection as such, provided he was lawfully where he was at the time of the accident. His right to recover was established when he proved that the accident was occasioned by the careless acts and conduct of defendant's servants. If the plaintiff was not a passenger and entitled to care and protection as such, it is probably true, within the principles decided in the case of *Nicholson* v. *Erie Railway Co.* (*supra*), that he could not have recovered for any injuries caused to him by defects in the car or the track, and that defendant was not bound to protect him against such defects. In such case he was, probably, bound to use the car and the track as he found them; but the defendant could not claim exemption from liability for carelessly running a train against the caboose and dashing it to pieces, and thus injuring the plaintiff, who was in no sense a trespasser or wrong-doer, and whose conduct in no way contributed to the accident.

The judgment should, therefore, be affirmed, with costs.

For reversal, LOTT, Ch. C., DWIGHT and GRAY, CC.

For affirmance, EARL, C.; REYNOLDS, C., not voting.

Judgment reversed.