The Atchison, Topeka and Santa Fe Railroad Co., Appellant, v. Headland, Appellee.

18 477
19 353

1. Statutory Construction—Passengers' Damage Act.

Section 1508, Mill's Ann. Stat., fixing a liability upon railroad companies and the like for personal injuries to passengers and others, may be divided with reference to the persons injured into two parts: the first giving a right of action to any person injured by the negligence, unskillfulness or criminal intent of any officer, agent, servant, etc.; the second furnishing a right of action where the death of a passenger resulted from a defect or insufficiency of a railroad, locomotive, stage coach or other public conveyance.

2. Judicial Notice.

The manner in which railroad companies conduct their business has been so long followed and with such a degree of uniformity, that courts are bound to take judicial notice of its general features.

3. Presumption.

Where a person riding upon a passenger train is injured, it is a presumption of law that he is entitled to the rights and privileges of a passenger, but this rule does not apply in the case of a train manifestly designed for the carriage of freight.

4. SAME.

The fact that a person was found in a caboose attached to a freight train is not sufficient of itself to warrant a court in assuming that the company had undertaken, as to him, the duties and obligations of a carrier of passengers. ' In the absence of proof to the contrary, the presumption is that he was not a passenger.

5. PASSENGER, FACTS INSUFFICIENT TO CONSTITUTE.

The fact that the conductor of a freight train after discovering a person in the caboose did not eject him, did not constitute the latter a passenger.

6. PASSENGER, WHO IS NOT.

A person who is riding upon a freight train without paying fare, and after having been refused permission to ride by the conductor, is not a passenger within the meaning of the second subdivision of the statute.

*Appeal from the District Court of El Paso County.*

THIS action was brought under the statute, by appellee as plaintiff, to recover damages for the death of her unmarried son, alleged to have resulted from the negligence of the defendant. The trial resulted in a verdict and judgment in favor of plaintiff for $3,500.

The case was submitted to the jury on the theory that the defendant had assumed towards the deceased the duties and obligations due from a common carrier to a passenger, and this forms the ground of the principal error relied upon in this court.

Appellant contends that the deceased was not entitled to be considered as a passenger under the evidence. The evidence upon this point is practically without contradiction. From this it appears that on May 14, 1888, between the hours of twelve and one o'clock at night, one Walter Chubbeck had charge of a freight train upon defendant's road, which was about to start from the city of Pueblo in this state, bound north ; that this train consisted of thirteen cars of freight, attached to the rear of which was a caboose.

The deceased, a young man about twenty-six years of age, was a cripple with an artificial foot and leg. The conductor, who was first introduced as a witness by plaintiff, testified

that just previous to the starting of the train from Pueblo he found Shipman on the front platform of the caboose. The deceased accosted him, saying that he was a cripple, and had formerly been a railroad man ; that he had a brother living at Greenland, near the line of the road between Pueblo and Denver, and that, as he was disabled from doing any more train work, he wanted to go there and make his living on a farm. He asked the conductor whether he ever showed favors to crippled railroad men. Chubbeck told him that this depended upon circumstances ; that he sometimes did. The deceased then produced a letter showing that he had been a brakeman on another road for ten or eleven months, and Chubbeck asked him why he did not apply to the Brakemen's Brotherhood for assistance. His reply was that " he had not broke long enough, and that he could not get in." Chubbeck, after examining the letter, told him that he could not carry him. The witness was afterwards asked this question :—" Was that all the conversation that took place between you ? A. No, sir; he asked me if I could carry him, and I told him I could not."

Motion for a nonsuit having been interposed and denied at the conclusion of plaintiff's evidence, the conductor was recalled as a witness for the defendant. He was then asked :—" What did you tell him as to whether you would carry him ? A. I told him that I could not do anything for him on the letter; that it would be an impossiblity for me to carry him ; that the letter was too old."

After the conversation at the Pueblo station, the conductor went up along the train and took the numbers of the cars. When he reached the engine, he found on the tender a fireman seeking employment. The regular fireman of the engine had consented to carry this man upon some claim advanced by the latter, and the conductor, finding that he was in the way of the head brakeman, sent this man back to ride in the caboose. The conductor did not return to the rear end of the train till it had left the station and was well under way. He then found in the caboose, besides the fireman, two or

three men traveling with stock on the train, and the deceased. It does not appear that any of the occupants of the car were either provided with transportation, or that any fare was paid to or demanded by the conductor.

The train proceeded to Colorado Springs, making but one stop between Pueblo and that point. This stop was made at Fountain, a small way station a short distance below Colorado Springs. The train arrived at Colorado Springs in safety. At this point, The Denver, Texas & Gulf Railroad crosses the roadbed of appellant. The train upon which deceased was riding was stopped at this crossing, it being necessary to do some switching in the yards at Colorado Springs; the rear six cars of the train with the caboose were cut off just south of this crossing, and left standing upon the track. The evidence shows that at this point the grade declines to the south. Two of these cars were provided with air brakes, and the conductor in person set these brakes, and ordered the rear brakeman to set the others. This brakeman testified at the trial that at this time he noticed that the air brakes were not holding, but that he set the hand brakes upon three, or perhaps four of the freight cars, and another witness testified to seeing him at work setting these brakes. At this point the stockmen and the conductor left the caboose, the deceased and the fireman remaining therein. There is some evidence that the latter were quarreling at the time.

The engine with the other cars proceeded up the main track to Colorado Springs, for the purpose of switching the stock cars on to a stub track. It took perhaps thirty or forty minutes to do this switching, and then the train was backed down for the cars left south of the crossing. It was then found that these cars were not there. The brakes had in some way been loosened, and the cars had started down the track. The testimony further shows that these cars ran as far as the station at Fountain, where they came in collision with the engine of another train. The cars immediately in front of the caboose were loaded with combustibles, which were exploded as the result of this collision. Soon thereafter

the mangled body of the deceased was found by the side of the track near the place of collision. What became of the fireman does not appear. He was not seen by any witness after the separation of the cars at the crossing near Colorado Springs, and diligent search failed to disclose any trace of him after that time. The theory of the defense was that in a moment of passion he loosened the brakes, and fled.

Mr. CHAS. E. GAST and Mr. HORACE G. LUNT, for appellant.

Mr. WILLIAM HARRISON and Mr. T. A. McMORRIS, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The statute upon which this judgment is sought to be upheld reads as follows:

" Whenever any person shall die from any injury resulting from or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee, whilst running, conducting or managing any locomotive, car or train of cars, or of any driver of any coach or other public conveyance whilst in charge of the same as a driver, and when any passenger shall die from any injury resulting from or occasioned by any defect or insufficiency in any railroad or any part thereof, or in any locomotive or car, or in any stage coach, or other public conveyance, the corporation, individual or individuals in whose employ any such officer, agent, servant, employee, master, pilot, engineer or driver shall be at the time such injury is committed, or who owns any such railroad, locomotive, car, stage coach or other public conveyance at the time any such injury is received, and resulting from or occasioned by defect or insufficiency above described, shall forfeit and pay for every person and passenger so injured the sum of not exceeding five thousand (5,000) dollars, and not less than three thousand (3,000) dollars, which may be sued

for and recovered, etc." Sec. 1508 Mills' Ann. Stat. This section received the careful attention of this court in the case of *The Atchison, Topeka & Santa Fe Railway Company v. Farrow*, 6 Colo. 498. The opinion in that case contains a clear and logical analysis of the statute, and the construction there given it has since been followed without question in this state.

It was held that the section might be divided with reference to persons injured, into two parts; the first giving the right of action to any person injured by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee, etc.; the second furnishing a right of action where the death of the passenger resulted from a defect or insufficiency of a railroad locomotive, stage coach, or other public conveyance.

Under the foregoing division there is no evidence in this case to sanction a recovery under the first subdivision. The uncontradicted evidence shows that the brakes upon the cars left upon the track were properly set, and it is conclusively shown that if the machinery of the road had been in good order and condition, the brakes would have been sufficient to have held the cars for many hours. It is not urged, nor do we think, considering the character of the train, that it was the duty of the defendant under the circumstances to leave a brakeman in charge of the cars left south of The Denver, Texas and Gulf Crossing. In fact, negligence on the part of any officer, agent, servant or employee of the defendant is not shown.

An examination of the complaint and a review of the trial in the court below shows clearly that the recovery was had upon the theory that the evidence showed conclusively that the deceased was a passenger upon the road of the defendant at the time of the injury, thereby bringing the case under the second subdivision, there being some evidence tending to show a defect in the air brakes. Whether the company had by its conduct assumed toward the defendant the duties and obligations due from a common carrier to a passenger, was not left to the jury as a question of fact to be determined

from the evidence, but that such relation resulted from the circumstances appearing in the evidence was assumed by the district judge in his charge to the jury. In our opinion, the district court was not warranted in this assumption.

The manner in which railway companies conduct their business has been so long followed, with such a degree of uniformity, that the courts are bound to take judicial notice of its general features. Among these may be mentioned the division of their freight and passenger business into two departments, and the separation of their passenger and freight trains. As a general rule freight is not carried upon passenger trains, and passengers are not carried upon freight trains. Where a person riding upon a passenger train is injured, it is a presumption of law that he is entitled to the rights and privileges of a passenger, but this rule does not apply in the case of a train manifestly designed for the carriage of freight, even if such train does have attached to it a caboose, as such vehicles are necessary for the accommodation of the employees of the company, and are usually used for this purpose only.

The fact that Shipman was found in the caboose attached to the freight train in question, was not sufficient of itself to warrant the court in assuming that the company had undertaken as to him the duties and obligations of a carrier of passengers. In the absence of proof to the contrary, the presumption is that he was not a passenger.

Not only is this presumption not overcome by the evidence, but it is strengthened thereby. The uncontradicted evidence shows that Shipman applied for passage to the conductor of the train, before the same left the depot at Pueblo, and while it is true that this application was made for a free ride upon a letter which the deceased exhibited, the conductor testifies that he not only refused to carry him upon the letter, but refused to carry him upon the train. This is the substance of all the evidence in reference to the conversation that took place between the conductor and Shipman at Pueblo, previous

to the motion for a nonsuit. The motion should have been sustained by the court.

The case as then made is not materially aided in this respect, by any evidence thereafter introduced.

The fact that the conductor, after discovering Shipman in the caboose, did not eject him, did not constitute the latter a passenger. The evidence shows that the conductor did not discover his presence until the train was well under way, and had proceeded a distance out of the city. The argument, that it was the duty of the conductor under the circumstances to stop the train and eject him from the car, cannot be given much weight, in view of the circumstances. The answer to this argument is found in the testimony of that officer, in answer to the following question :

"Why did you not stop the train and put him off ? A. I just didn't have the heart to do it. I didn't feel disposed to put off a cripple in the middle of the night, out in the country."

If the deceased had been a strong, able-bodied man, traveling in the daytime, it would perhaps have been the conductor's duty to have put him off at the first station, but if, from feelings of humanity he allowed a cripple to remain on the car, rather than put him off at midnight, certainly the law will not from this forbearance raise the presumption that the deceased was entitled to all the rights of a passenger upon the defendant's train. The real question is as to whether the defendant should be held to have consented to receiving the deceased as a passenger upon its freight train.

If the defendant had been in the habit of carrying passengers upon such trains, evidence of this fact should have been produced. To overcome the presumption against such a custom, it is not sufficient that in the present instance there were upon the caboose others beside Shipman. With one exception, they were all men in charge of stock upon the train, and it may be customary for such persons to travel on the same train with the stock, and not for others to do so.

As to the fireman, he was on the train at the demand of his brother fireman.

In our opinion, the deceased is not shown to have been a passenger at the time of the accident. A · number of well considered cases will be found supporting this conclusion.

In the case of *Eaton v. The Delaware, Lackawanna and Western Railroad Company*, 57 N. Y. 382, the plaintiff got upon a coal train on the defendant's road, at the invitation of the conductor. To this train no passenger car was attached, but at the end of the train there was a caboose in which plaintiff was invited to, and did ride. Through the negligence of the company's employees, the train was run into by another, and plaintiff injured. At the trial it was shown that by a regulation of the defendant, printed for the use of employees, passengers were forbidden to ride on coal trains, but of this regulation plaintiff had no actual notice. It did not appear that it was the custom to allow passengers to ride in the caboose. Under these circumstances the trial court instructed the jury that if plaintiff was upon the train with the assent of the conductor, and without being informed of the regulation, then defendant was liable. Upon appeal, this instruction was held erroneous, and the liability of the company denied. It was said that there was nothing in the attendant circumstances indicating an apparent authority in the conductor to create between the parties the relation of passenger and carrier. It is further said in this case, in substance, that while the conductor of a passenger train has ample authority to receive passengers upon his train, that the conductor of a freight train has no such authority, and that in the case of a stranger riding upon a freight train, the presumption would be indulged that he is not legally a passenger, and that to such a person the company was under no obligations to be careful.

In *Elkins v. The Boston & Maine Railroad Company*, 3 Foster (N. H.) 275, the action was for the loss of goods carried on a passenger train. The evidence showed that the conductor of the passenger train had previously carried

goods and eggs to market for the same individual. The court held that this was not sufficient to show that the company held itself out as a common carrier of goods by such train, it not appearing that the conductor rendered such service by virtue of any authority derived from the company, or that any compensation was received, either by the company or himself.

In *Murch v. The Concord Railroad Corporation*, 9 Foster, 9, it was charged that the injury was occasioned by the failure of the company to furnish safe means of access for passengers upon its freight trains, and the court held that no such obligation rested upon the company, it not being shown that the company made it an habitual business to carry passengers upon its freight trains.

In the case of *The Toledo, Wabash & Western Railway Company v. Brooks*, 81 Ills. 245, it was held that no recovery could be had of the railway company for personal injuries to a passenger on its train of cars, or for his death caused by mere negligence, when such person knowingly and fraudulently induced the conductor to disregard his duty and defraud the company out of the amount of his fare for his own profit.

In the case of *The Union Pacific Railway Company v. Nichols*, 3 Kansas, 505, the company was engaged in transporting freight and messengers for the express company. The plaintiff was not in the employ of the express company, but went into the baggage car with the regular express messenger for the purpose of learning the route, and assisting the regular messenger with his work. The conductor did not know these facts, but supposed that such person was an express messenger in the employ of the express company, and, acting on this supposition, allowed him to ride without paying his fare. The injury was caused by the baggage car turning over, and the court held that the plaintiff was not a passenger, and not entitled to the rights of a passenger.

In the case of *The Virginia Midland Railway Company v. Roach*, 83 Va. 375, the action was brought by a former fire-

man of the railroad company, who had accepted the invitation of one of its engineers to ride on the engine with him. The conductor of the train saw him on the engine and spoke to him there. The plaintiff neither paid any fare, nor had any been demanded of him. The rules of the company, which every employee was required to learn, prohibited any one but the engineer and certain employees from riding on the engine. It was held that plaintiff was charged with notice of this rule, and that he could not derive any authority from the engineer or conductor for his act; that he was a mere trespasser, and could not recover for injuries sustained.

In *Waterbury v. New York C. & H. R. R. Co.*, 17 Fed. Rep. 671, the plaintiff, a drover having stock in charge, claimed that he was riding on the engine by the consent of the engineer, to look after his cattle, as was customary. The defendant claimed that it was contrary to orders for anybody other than its employees to ride on the engine. The court held that as to whether defendant had, notwithstanding its rules for the government of its employees, by its conduct held out its employees to the plaintiff as authorized under the circumstances to consent to his being carried on the train, should have been submitted to the jury. The court further held that it was a presumption of the law that persons riding upon trains which are palpably not designed for the transportation of passengers are unlawfully there, and that if it be shown that the consent of the carrier's employees had been obtained to their being there, the presumption is against the authority of employees binding the carriers by such consent. It was said, however, that such presumption may be overthrown by special circumstances, and where the railroad company would derive a benefit from the presence of drovers upon its cattle trains, and may have allowed its employees in charge of such trains to invite, or permit drovers to accompany the cattle, the presumption against the license to the person thus carried may be overthrown.

An examination of the cases cited, as opposed to the con-

clusion that deceased was not a passenger, shows that they are readily distinguishable from the present case.

In *Dunn v. The Grand Trunk Railway Company of Canada*, 58 Mo. 187, the injured party, although riding in the caboose of a freight train contrary to the rules of the company, was treated by the conductor as a passenger, and first-class fare collected from him.

In *Cleveland v. The New Jersey Steamboat Company*, 63 N. Y. 306, the plaintiff was injured before the boat upon which he was a passenger had left its wharf, and before he had an opportunity to pay fare, and the court held that the carrier owed him the duty of a carrier to passengers, although no fare had been paid.

In *Jacobus v. The St. Paul & Chicago Railway Company*, 20 Minn. 125, the plaintiff received a personal injury through the negligence of the defendant's servants in charge of a passenger train, upon which plaintiff was traveling on a free pass, and the court held that the same degree of care was required of defendant as if plaintiff had been a passenger for hire. Here the company had undertaken to carry, and the duty arose from this fact.

In *The Pennsylvania R. R. Co. v. Books*, 57 Pa. St. 330, the plaintiff was a route agent, riding upon a passenger train, and the court held that every one upon the car was presumed to be lawfully there as a passenger, having paid, or being liable, when called upon, to pay his fare, and that the onus is upon the carrier to prove affirmatively that he was a trespasser. The case has no similarity to the one under consideration.

In *Creed v. Pennsylvania Railroad Company*, 86 Pa. St. 130, it was held that "where one is traveling by a passenger train, and is not connected with the railroad company, the legal presumption is that he is a passenger and traveling for a consideration." A conclusion which we do not dispute.

As to the criticism of Judge Thompson upon the decision in *Eaton v. The Delaware, Lackawanna & Western Railroad Company*, to be found in his work on Carriers of Passengers,

at page 344, it is to be observed that the criticism does not apply to the case before us.   In that case the company was held not liable for an injury resulting from the gross negligence of its employees, although the injured party was invited to ride by the conductor; here the deceased was refused passage by the conductor, and the recovery is based upon the claim that he was entitled to the care due a passenger.

It not appearing that the deceased was a passenger upon the defendant's freight train, the plaintiff is not entitled to a recovery under the second subdivision of the statute, and the judgment must be reversed.

*Reversed.*