WILLIAM GARDNER vs. THE NEW HAVEN AND
NORTHAMPTON COMPANY.

The plaintiff desired to procure the transportation of a horse in his charge
by the defendant's railroad, and applied to *A*, who had several horses
to go by the same train, to take his with his own and have them billed
together in *A's* name. This was done. A printed rule of the com-
pany provided that only one person should go free with stock, and on
*A's* stating to the defendant's agent that there might be another man
to go with him, the latter replied that he would have to pay fare. *A*
did not mention the plaintiff's name and the company had no other
knowledge of his intention to go by the train. He assisted *A* to get
the horses on board and intended to get a ticket, but had no time, and
expected to pay his fare when called upon by the conductor. The train
was a freight one. On the passage, and before the plaintiff had paid
any fare, the train was run into by another, through the negligence of
the defendant, and the plaintiff injured. Held that the defendant
was not liable.
The intention of the plaintiff to pay his fare, and his good faith in the
whole matter, were immaterial. The company had no knowledge of
it, and came into no contract relation with him.

[Argued June 21st—decided July 27th, 1883.]

ACTION to recover for an injury received by the plaintiff
while travelling in the cars of the defendants, a railroad
company; brought to the Superior Court. The case was
heard in damages after demurrer overruled by *Andrews, J.*,
and the following facts found.

The defendant is a common carrier of passengers and
merchandise from Turner's Falls, through the towns of
Northampton and Westfield, in the state of Massachusetts,
to New Haven, in Connecticut, having regular trains for
passengers and other trains for the carriage of freight. On
the 14th of October, 1881, John C. Avery bargained with
the defendant to transport eight horses, from Northampton
to Harlem River in the state of New York. One of these
horses was not owned by Avery but by the Rev. Dr. Gard-
ner, of New York city, a brother of the plaintiff. This
horse was in the care of the plaintiff, who was taking
it to New York. A few days before this the plaintiff,

knowing that Avery was about to take some horses to New York, applied to him to procure transportation for this horse along with his, and for the plaintiff to go in the car with the horse to take care of him. Avery engaged cars for the horses a day or two before the 14th, at which time the defendant's agent made known to him their rates and rules for the transportation of live stock and for persons going in the car to take care of it. Among these rules were the following:—

" 4. Owners are to load, unload, and feed, at their own risk and expense, and assume all risk of damage that animals may cause to each other or themselves, and all damage in consequence of their breaking from the cars. No risk will be assumed by the railroad companies, nor damage allowed, unless specially agreed to when the animals are taken for transportation, and an additional price paid.

" 5. One person will be allowed to pass free when accompanying his stock, to take care of it, and paying the price for not less than 9,000 lbs.; and in no case will be allowed to ride free on a passenger train."

At this interview Avery said to the defendant's agent that there might be another man to go with him ; to which the agent replied : " Then one of you will have to pay fare." Avery had reference to the plaintiff, but he did not so state to the agent, nor did he inform him that he was not the owner of all the horses. The horses were put upon the defendant's cars, six in one car and two in another, at Northampton, on the morning of October 14th, the plaintiff being in company with Avery and assisting. They were delayed in the loading so long that the plaintiff did not have time to procure a ticket before the train started. He entered one of the cars with Avery to look after the horse of which he was in charge, expecting to pay his fare to the conductor when it should be demanded. At Westfield these cars were placed on a side track to wait for the coming of the through train to New York, and while standing on the side track they were violently run into by other cars of the defendant, causing the injury to the plaintiff of which he complains.

The defendant was negligent and careless in so doing. There was no agreement or understanding between the plaintiff and the defendant other than is herein stated.

At the hearing the plaintiff introduced evidence in chief only as to the extent of his injury. Upon cross-examination of the plaintiff in this part of the case the defendant called out from him the facts in regard to his arrangement with Avery substantially as herein before set forth, and also the fact that he had no ticket when he entered the car. After the defendant had rested the plaintiff called Avery in reply, who testified as follows :—" I shipped these horses ; I did not own them all ; a few days before the 14th I spoke to the agent at Northampton for cars sufficient to take six or eight horses to New York ; I asked him how much it would be ; he read me their rules as to rates and also their rules as to any one going in the car free. I said I thought there would be another man to go with me ; the agent then read the rule respecting a man going free to take care of his stock, and said that if there was more than one man, one would have to pay fare. I said, ' Can you give me a pass ? ' He said he had no authority to give one. When I took the horses there Gardner was with me ; we had but little time to load them before the cars started. I went in and paid the freight ; I paid on all the horses and the wagon ; I got a receipt. After I came out Gardner said he must go and pay the freight on his horse ; I told him I had paid it along with mine."

Avery was going on to state the arrangement between himself and the plaintiff pursuant to which he had engaged the transportation for the plaintiff's horse, and had stated that the plaintiff had requested him so to do. The plaintiff's counsel asked him, " Did Gardner say anything more? " The witness answered :—" He said that he wanted to go down in the car with the horse, as his brother had requested him to come down and take care of the horse." The question was then asked :—" Did Gardner say anything before the train started about the payment of his fare ; and if so, what? " The witness answered :—" Just as the train was about to start

Gardner said he must go and pay the freight on his horse; I said I had paid it at the same time I paid mine. He then said, 'Let me pay you.' I said, 'Let it go till we are on the car.' He then said, 'Hadn't I better go and get a ticket?' I said, 'You will not have time now to go to the passenger depot and get back; you can pay the conductor on the train when he demands it.' The engine had backed down at that time and the train was just about to start." All these questions and answers were objected to, but the court, for the purpose of showing the good faith of the plaintiff, admitted them.

The court assessed the damages at $1,000, and the defendant appealed to this court, assigning as errors, that the damages should have been only nominal, and that the evidence admitted by the court was inadmissible.

*W. C. Case*, for the appellant.

1. Gardner had done nothing to acquire the character of a passenger. He was a mere trespasser, and the company did not owe him the duty it owed a passenger. Shearm. & Redf. on Negligence, §§ 262, 264; *Patterson* v. *Philadelphia &c. R. R. Co.*, 4 Houst., 103; *Johnson* v. *Boston & Maine R. R. Co.*, 125 Mass., 75; *Godfrey* v. *Ill. Central R. R. Co.*, 14 Am. Law Reg., 290.

2. But it is said that he entered the car in good faith, supposing that he had a right to transportation in that car, and intending to pay fare if it should be demanded. But entering the car in good faith could not affect his relation to the company. *Lillis* v. *St. Louis &c. Railway Co.*, 64 Misso., 464. The court below however held that proof of good faith in entering the car was an important part of the plaintiff's case, and permitted him to introduce evidence upon that point, to which the defendant objected as not competent, and the admissibility of that evidence is the second question raised by this appeal. The state of the case upon this point was this:—The plaintiff sued us for damages arising from an injury received in a freight car—a place where no passenger had any right to be except with

our knowledge and special consent. We knew that we had had no dealings with this plaintiff; that no horse was shipped by him or in his name; that he had engaged no passage of us; that he had bought no ticket and paid no fare; we knew that he had made no contract for the transportation of his property or person with any of our agents, and we knew nothing of him until he was injured and claimed damages. Upon these facts it is impossible that we can be affected by his intention to pay his fare, never brought to our knowledge in any way.

*C. R. Ingersoll.*and *W. B. Stoddard*, for the appellee.

1. There is no foundation for the defendant's claim that we were unlawfully on the car, or that the plaintiff was a trespasser in any sense of the word. The finding of the court that Avery had informed the defendant's agent that another person would go on the cars, and the agent's consent to have that other person go provided he paid his fare, and that the plaintiff entered the car expecting to pay his fare, taken together with the defendant's rules, show beyond question that the company knew that he intended to go in the car with the horses, and that they expected that he would, and gave their consent for him to do so. The fact that he entered the car without a ticket does not make him a trespasser or prove that he was unlawfully there. He did not have time to purchase a ticket before entering the car. It was not suggested by the defendant's agent that he must purchase a ticket before entering the car. All he said was that the other person would have to pay his fare. It was optional with the plaintiff to purchase a ticket or pay his fare to the conductor. The public understand that the rules of a railroad company allow a passenger to pay the conductor and the conductor to receive the fare, or, if the passenger prefers, to purchase a ticket and save five cents thereby. Both rules are in force, and the passenger can adopt either and be lawfully on the train. He does not become unlawfully on the train until he has refused to pay the conductor his fare when demanded. The plaintiff was

ready and expected to pay his fare when demanded. It was the duty of the conductor to demand it. *Brennan* v. *Fair Haven & Westville R. R. Co.*, 45 Conn., 298. The fact that he had no ticket is immaterial. There was no contract or understanding that the defendant was excused or released from its liability. *Nolton* v. *Western R. R. Co.*, 15 N. York, 444; *Carroll* v. *Staten Island R. R. Co.*, 58 id., 126; *Todd* v. *Old Colony & Fall River R. R. Co.*, 3 Allen, 18; *Philadelphia & Reading R. R. Co.* v. *Derby*, 14 How., 468. As he had in fact shipped freight on this train, if he had not paid any extra fare for himself he would not have been a free passenger. *Railroad Company* v. *Lockwood*, 17 Wall., 358; *Welch* v. *Boston & Albany R. R. Co.*, 41 Conn., 333. If we admit that the plaintiff was on the car without right, and was technically a trespasser, that fact does not justify the defendant in carelessly and negligently injuring him. *Patterson* v. *Philadelphia &c. R. R. Co.*, 4 Houst., 103; *Birge* v. *Gardner*, 19 Conn., 511; *Daley* v. *Norwich & Worcester R. R. Co.*, 26 id., 591; *Isbell* v. *N. York & N. Haven R. R. Co.*, 27 id., 393; *Brennan* v. *Fair Haven & Westville R. R. Co.*, 45 id., 284. If the plaintiff was wrongfully on the car, that fact was not the proximate cause of the injury. There is a wide difference between the person who unlawfully walks upon the track where the inevitable result to him will be an injury, if the cars are run in their usual and lawful manner, and the person who is unlawfully on a car. The person unlawfully on a car will receive no more injury than if he was lawfully there. The injury where there is an accident is the result of the accident, not of the unlawful act of the trespasser. The proximate cause of the injury was the negligent running of the trains together, not the plaintiff's act of being on the car, even if wrongfully there. *Carroll* v. *N. York & N. Haven R. R. Co.*, 1 Duer, 571.

2. The defendant's second reason of appeal is that the questions put to the witness Avery by the plaintiff, and his answers thereto, were improper and immaterial. We contend that there was no error in the ruling allowing the

questions and answers. In his opening the plaintiff only proved his damages. The defendant brought out the fact that the plaintiff had no ticket, and also brought out the facts concerning the arrangement between Avery and the defendant, claiming that the plaintiff entered the defendant's car wrongfully, and with the pre-conceived idea of defrauding the defendant out of his fare. The question at issue was, why did the plaintiff get upon the car without a ticket? Was he there with the intention of defrauding the company, or was he there *bonâ fide* in the regular course of business? We desired to find out what he meant by this act of getting on the car without a ticket. What was in the plaintiff's mind and what were his intentions at this time? Were they honest or dishonest? We have his acts; they are equivocal and uncertain. His intentions might have been honest or they might have been dishonest. The question, what did he say when he was doing this act, was intended to bring out his declarations when he was doing these acts, to characterize these acts, and was admissible. *Russell* v. *Frisbie*, 19 Conn., 210; *Sears* v. *Hayt*, 37 id., 406; *Turner* v. *Baldwin*, 44 id., 121; *Stirling* v. *Buckingham*, 46 id., 464.

GRANGER, J. This is an action brought by the plaintiff to recover damages for an injury received by him while upon the cars of the defendant, a railroad corporation and common carrier of freight and passengers. The Superior Court, upon demurrer overruled and a hearing in damages, rendered judgment for the plaintiff to recover $1,000 damages. The defendant appeals, and the case is before this court upon that appeal.

Two reasons of appeal are assigned :—

1st. Because upon the facts found by the court the plaintiff was at the time of the accident a trespasser on one of the defendant's freight trains, upon which no passengers were transported, and seeking to obtain a passage on the road without the consent or knowledge of the defendant and without payment therefor; and that he is therefore not

entitled to recover for the damage which he claims to have received.

2d. That certain questions and answers (stated in the finding) were inadmissible and that the court erred in receiving them.

The whole controversy in the case depends upon this question—was there any contract relation, express or implied, between the plaintiff and the defendant in this case; or, in other words, was the plaintiff a passenger according to the legal meaning of the term on the defendant's road at the time the accident happened?

We have no hesitation in answering this question in the negative, and in saying that the defendant, under the facts disclosed in the finding, was not liable for more than nominal damages. The plaintiff was in no legal sense a passenger on the road, but was in the car at the time without the consent or knowledge of the defendant. This clearly appears from the facts disclosed. The train upon which he was injured was, so far as the case shows, exclusively a freight train; there was no passenger car attached, and no invitation to the plaintiff nor to the public to take passage upon it. The plaintiff paid no fare, and whether he intended to pay or not when called upon is of no consequence, so that his good or bad faith in taking his place on the car among the horses is quite immaterial. He had no business to be there without the consent of the defendant, and he had no rights except that of immunity from wilful and wanton injury common to all citizens. Railroad companies have the clear and undoubted right to make rules and regulations that are reasonable and proper for the running of their trains. It would be impossible to conduct their vast business otherwise. If a person desires to be transported as a passenger he must comply with the rules of the company in regard to payment of fare and conduct while on the train, and all other reasonable requirements of the company. If a person desires to have his goods transported he must in like manner comply with the rules of the company in relation to all matters appertaining to the shipment, transfer

and delivery of the goods transported. The whole duty of the company towards shipper or passenger is a duty resting entirely upon contract, express or implied.

Now what was the contract duty of the defendant towards this plaintiff? Was there any? What are the facts? The plaintiff really had no transaction whatever with the defendant. He bought no ticket, paid no freight, in no way made himself known to the company or any of its agents or employees, either as passenger, shipper, or custodian of any of the horses which had been shipped by Avery. This person it seems, on the 14th of October, 1881, contracted with the defendant corporation to transport eight horses from Huntington, Massachusetts, to Harlem River or New York. Avery owned but seven of these horses; one belonged to a brother of the plaintiff, Rev. Dr. Gardner of New York. The plaintiff had the custody of this horse. Avery was applied to by him prior to October 14th, to permit this horse to go along with his horses under the same way-bill and to permit the plaintiff to accompany it. Avery engaged cars of the defendant for the eight horses a day or two before the 14th, at which time he was fully informed by the defendant of its rates and rules for the transportation of live stock. One of these rules was that " one person will be allowed to pass free when accompanying his stock to take care of it and paying the price for not less than nine thousand pounds, and in no case will he be allowed to ride free on a passenger train."

At this time Avery said to the defendant's agent that there might be another man to go with him, and he was told by the agent distinctly that one of them would have to pay fare. Avery at this time made no mention of the plaintiff and did not disclose the fact that he was not the owner of all the eight horses. The name and existence of the plaintiff, the fact that he had any interest in one of the horses, or that he intended to accompany Avery, was, studiously or otherwise, concealed from the defendant. Avery in this transaction must be held to be the agent of the plaintiff and must be presumed to have communicated to

him the terms upon which the animals were shipped; if not, the plaintiff was bound to ascertain for himself, before he started upon the train with the horses, whether or not he had a right to be there.   The defendant concealed nothing; the rules and regulations were known and read of all men who had dealings with the company, or might have been, and it would have been very easy for the plaintiff to place himself in a correct position in relation to the company; but the facts all show that he was in a false position, and whether he intended to go on the train as a stow-away or not, is, as we have said, immaterial.

An excuse, or something in its nature, is claimed by the plaintiff for his non-payment of fare.   It is said that there was not time for him to procure a ticket after the horses were loaded and that he was expecting to pay his fare when the conductor called for it.   But the case does not show that it was the custom of conductors, or their duty, on a train of this character to call for fares or tickets; for aught that appears it was a stock train without any passenger car attached, while it also appears that the plaintiff was in one of the cars with the horses.   It will be remembered that the rules of the company permitted one person to ride in the car with his stock to look after and take care of it, and it is a reasonable presumption that the conductor was not expected to go through the stock car for the purpose of collecting fare or taking up tickets.   It is a place where passengers would not be likely to ride unless the safety of their stock required it, or unless their intent was to secure a free ride.

The plaintiff then of his own motion placed himself in this car with the horses without the consent or knowledge of the defendant, and against the rules of the company as to payment of fare.   He well knew, or had the means of knowing, that he had no right there as a passenger, and he also knew, or ought to have known, that it was a place of extra hazard; a car loaded with horses being, in case of collision or any serious accident, anything but a safe or desirable place for a passenger.   Whatever injury the plain-

tiff received we think therefore must be attributed to his own neglect or misconduct in placing himself in a position of peril without any express or implied assent on the part of the defendant.

The question as to the admissibility of the evidence objected to is substantially disposed of by the foregoing considerations. The intention of the plaintiff to pay his fare if demanded, under the facts found was immaterial; his intent could not change the position of the defendant, or make it liable *ex contractu*. If he had actually paid his fare the case would present an entirely different aspect, but as the facts now stand he has no claim for more than nominal damages.

There is manifest error in the judgment complained of and it is reversed.

In this opinion PARK, C. J., and LOOMIS, J., concurred; CARPENTER, J., dissented; PARDEE, J., did not sit.