The Texas & Pacific Railway Company v. James Black.

No. 180.

### 1. Freight Trains—Passengers—Notice.

A railway company has the right to carry passengers and freight by different trains, and when such provision is made the conductor and brakemen have no implied authority to receive passengers upon freight trains; it is not within the scope of their authority. When one gets on a train made up exclusively of cars appropriate *alone* to the carrying of freight and the employes on such train, he must take notice of the fact that the train is not provided for passengers......... ....... 161

### 2. Conductor and Brakeman on Freight Trains.

A conductor of a freight train, made up of cars suitable alone for carrying freight, without authority of the railway company expressly or tacitly given, can not receive passengers upon such train and bind the railway for the risks of transportation. Such assent may be inferred if the railway company permits its freight trains to carry passengers, or if the servants carry passengers and such acts are known or should be known by the management of such railway....................... 164

### 3. Fact Case.

See facts which fail to establish that the injured party upon a freight train was a passenger, or that the act of a brakeman causing the injury was in line of his duty, so as to bind the company for his wrongful act. 165

Error to Court of Civil Appeals for Fifth District, in an appeal from Bowie County.

*F. H. Prendergast,* for plaintiff in error.—The court erred in holding the receivers or the company liable for the malicious acts of the brakeman in striking the boy, because said act was beyond the scope of his authority, and because he had no authority to put the boy off. Railway v. Anderson, 82 Texas, 516; Railway v. Moore, 49 Texas; 31; Railway v. Prince, 64 Texas, 145; Railway v. Campbell, 76 Texas, 175; Railway v. Scott, 64 Texas, 551; Coal Co. v. Heeman, 86 Pa. St., 418; Marion v. Railway, 59 Iowa, 428; Benton v. Railway, 55 Iowa, 496.

*P. A. Turner* and *J. M. Talbot,* for defendant in error, cited: Railway v. Anderson, 82 Texes, 516; Railway v. Moody, 23 S. W. Rep., 41;

Railway v. Mother, 24 S. W. Rep., 79; Railway v. Kirkbride, 79 Texas, 457; Railway v. Moore, 49 Texas, 31; Railway v. Randolph, 53 Ill., 510; Railway v. Prince, 64 Texas, 145; Railway v. Campbell, 76 Texas, 175; Railway v. Brooks, 81 Ill., 245; Whitehead v. Railway, 99 Mo., 263; Railway v. Yarbrough, 83 Ala., 238; Brown v. Railway, 38 Kans., 634; Stewart v. Railway, 90 N. Y., 588; Thomp. on Carr., 363; Pass. Car. by Ry., 253.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals filed the following conclusions of fact in the above cause, in which judgment had been rendered by the District Court against the plaintiff in error.

"In 1887, Frank Black, a boy about 12 years of age, and stepson of appellee, James Black, boarded a freight train of appellant, at the T. C. Junction, five miles west of Texarkana, after obtaining permission from a brakeman, to whom he paid 15 cents for the privilege. The train was composed of an engine, flat cars, and a caboose. When the train was nearing Texarkana, and while running, the brakeman came out of the caboose and told Frank to get off, which Frank refused to do. The brakeman then picked up a lump of coal, threw it at Frank, struck him above the eye, and knocked him off. The car ran over his feet, crushing them so they had to be amputated.

"There was no testimony as to whether or not passengers were allowed to ride on freight trains, further than the testimony of Frank Black, who testified as follows: 'I had no ticket. Knew I did not need one, and had no reason to get one. I get a ticket to ride on a freight train when I am going any distance. Some people buy tickets to ride on freight trains and some do not. I have seen lots of them do it.' In the absence of other testimony, we conclude that he was a passenger and was rightfully on the train.

"The appellee, James Black, when he married Frank's mother, received Frank as one of his family, and provided for him as one of his own children. The services of Frank are worth the sum of $800."

If the railway company had a regulation prohibiting passengers riding on freight trains, and Frank Black knew of the regulation, he would not be entitled to the protection of a passenger. It would in such case rest upon the plaintiff to prove such facts as would show that the railway company had permitted the use of its freight trains by passengers to such extent as would authorize one entering such train to believe that the rule had been abrogated by the company. Railway v. Moore, 49 Texas, 47; Railway v. Cock, 68 Texas, 717; Railway v. Campbell, 76 Texas, 174.

A railway company has the right to carry passengers and freight by different trains; and when such provision is made, the conductor and brakemen have no implied authority to receive passengers upon freight

trains; it is not within the scope of their authority. When one gets on a freight train made up exclusively of cars appropriate *alone* to the carrying of freight and the employes on such train, he must take notice of the fact that the train is not provided for passengers. Hutch. on Carr., sec. 514; Patt. Ry. Acc. Law, secs. 215, 379; Waterbury v. Railway, 17 Fed. Rep., 671; Eaton v. Railway, 57 N. Y., 382; 15 Am. Rep., 515; Robertson v. Railway, 22 Barb., 91; Railway v. Moore, 49 Texas, 47; Railway v. Cock, 68 Texas, 717.

In Eaton v. Railway, supra, the court said: "The presumption is, that a person riding on a freight train is not legally a passenger; and it lies with him who claims to be one to take the burden of proof to show that under the special circumstances of the case the presumption has been rebutted. So if a stage coach proprietor should regularly carry his passengers in a stage and their baggage in a wagon, there would be a fair presumption that the wagon was not intended for passengers, though under special circumstances it might be used in that manner. A person asserting that he was a passenger, though riding in the baggage wagon, would be bound to prove it. In both these cases the distinction between the passenger and freight business would be so marked by external signs of classification that any person of ordinary prudence would take notice of it. This would be equivalent to actual notice, and the burden of proof would devolve upon him to show that the carrier had relaxed his rule." This case was referred to by Judge Moore in Railway v. Moore, with seeming approval. Substantially the same doctrine is asserted by Judge Maltbie in Railway v. Cock, supra. He said: "The servants of appellant who gave appellee permission to ride on the car are not shown to have had the power to abrogate or suspend rules promulgated by the proper authority for the operation of the road; and the court below could not assume that said servants, in so doing, were acting within the apparent scope of their authority."

There is a line of authority holding, that where a person enters the caboose of a freight train, and is permitted by the conductor to remain, and fair is paid, he is to be considered as a passenger. The leading case seems to be Dunn v. Railway, 58 Maine, 187 (4 American Reporter, 267). This case was referred to by Judge Moore in Railway v. Moore, noting the criticism of Mr. Redfield, and in the same connection he referred to the case of Eaton v. Railway, cited above. Much is said in Dunn v. Railway which is in conflict with well settled principles of law; but it is to be observed that in that case the decision is consistent with the doctrine of Eaton v. Railway. That railway company had before that time carried passengers on its freight trains, and had but a short time before changed that rule, of which change the injured party had no notice.

The case of Dunn v. Railway announces broadly the proposition, that "every one riding in a railway car is prima facie presumed to be there

lawfully as a passenger, having paid, or being liable when called on to pay his fare, and the onus is upon the carrier to prove affirmatively that he is a trespasser." In support of this proposition the court refers to Railway v. Books, 57 Pennsylvania State, 346; but that case was one in which a person riding on a passenger train was injured, and does not in any way sustain the rule as applied in Dunn v. Railway, cited above.

It is in direct conflict with the general and fundamental principle of agency, that an agent can only bind the principal by doing the thing authorized, or which is within the general scope of the agency; that is, such things as are usually done in and necessary to the accomplishment of the objects of the agency. Story on Agency, sec. 85.

The doctrine announced in that case involves the following propositions: First. By disobeying orders and doing that which is not within the scope of his authority, an agent can bind his principal. Second. That one taking passage on a freight train does not, in law, know that which must be seen by any one who is not blind, and which must be understood by any one who has ordinary intelligence. It deprives the railway company of all power to protect itself against the risks of such means of transportation, and relieves the individual of all obligation to take care of his own safety. If this is a correct rule to apply to railways, it is equally applicable to other kinds of business.

Take the illustration given in Eaton v. Railway, of a carrier of passengers and freight by means of stages and wagons; or to make it more applicable to the present conditions, a transfer line in a city which carries passengers from railway depots to hotels in buss and carriages, and their baggage in a baggage wagon. If a passenger seeking such transportation for himself were, with the consent of the driver on the baggage wagon, paying to him the usual fare, to get upon the wagon instead of a carriage or buss, and the driver should before reaching the destination knock him off the wagon, would any court hold that he was to be considered lawfully upon the wagon as a passenger? Certainly it would not be so held; and there is no difference in the rules of law to govern these cases, nor in the reason which should control in the application of those rules.

If the conductor of a freight train, made up of cars suitable alone to carrying freight, can without authority of the railway company expressly or tacitly given, receive passengers upon such train and bind the railway for the risk of transportation, a conductor of a passenger train may with equal propriety load the coaches of his train with cotton or grain, and make the company liable as a common carrier of freight.

It is said that a railway company may carry passengers on freight trains; this is correct, and it is equally true that it may carry freight in its passenger coaches if it choose to do so. But this no more proves that a conductor of a freight train may carry passengers without authority to do

so, than that a conductor of ɩa passenger train may in like manner carry freight in the coaches of his train.

It is argued that the conductor of the freight train should inform the passenger that he is forbidden to carry passengers, and if he does not do so the passenger may presume that it is lawful to ride there. This simply makes the carrier liable in every instance for a violation by a conductor of the duties imposed upon him. It means that the fact of disobedience is equivalent to authority, so far as the liability of the railway is concerned; for when the injury has occurred it is too late to tell the injured party that the conductor had no right to carry him.

If the doctrine of Dunn v. Railway were applied to mercantile or other business, and it were held that every act of an agent, whether within the scope of his agency or not, should be presumed to be binding upon the principal, the employment of agents would be extremely hazardous, and all power of control over agents would be taken away.

If, however, a railway company permits its freight trains to carry passengers, then it is bound to such passengers to the same extent as if carried by their regular passenger trains, except such inconveniences and risks as are peculiarly incident to the means of transportation. Although a railway company may not authorize the carriage of persons on its freight trains, or may prohibit it, yet if the servants carry passengers on such trains to the knowledge of the company's officers authorized to make and enforce rules, or if it is carried to that extent that such officers in a proper discharge of duty should know of the facts, and no effort is made to stop it, then a passenger is authorized to presume that it is permitted by the company, and will be protected as a passenger on such trains. But it can not be said that a disobedience of orders can annul the order, except upon the principle that the officers, knowing of the violation, ratify it, and waive the rule forbidding it. Whatever falls short of this will not serve to confer authority upon or enlarge the powers of an agent.

The opinion of the Court of Civil Appeals in this case does not disclose the ground upon which it held that Black was a passenger on the defendant's train. The findings of fact are very meager, and we are justified in looking to the undisputed evidence for light upon the points involved. The boy that was injured testified: "I had no ticket; knew that I did not need one, and had no reason to get one. I get a ticket to ride on a freight train when I am going any distance. Some people buy tickets to ride on freight trains and some do not. I have seen lots of them do it." He testified that he had never seen anyone buy ticket for freight trains at the Texas Central Junction, the place where he got on. Frank Black lived at Texarkana; he had come out on the rear of a sleeping car that morning behind a passenger train, and he inquired of the ticket agent when the passenger train going to Texarkana would arrive, and was told

that it was late.  He went on the opposite side of the track to get permission of the brakeman to ride on the freight train, but did not do so to avoid being seen by the agent.  He did not go into the caboose, but upon a flat car.

This court knows judicially that there are a number of railways besides that of defendant running into Texarkana.  Railway v. The State, 72 Texas, 404.  This evidence of the boy does not tend to prove that he had seen persons ride on freight trains on defendant's railway, and if it did, it does not go the extent of showing that it was with the permission of the officers authorized to give that permission, or that it had continued so long and was of such frequency that a jury could say that such officers, if they did their duty, must have known of it.  In Railway v. Cock it was proved that the person riding on the hand car had the permission of an officer in charge of it, but the court said that was not sufficient, because it did not prove that the person who gave the permission had authority to allow it to be done.

In no aspect of this case can the boy be regarded as a passenger under the facts found by the court.  It is clear from his evidence, that although but 12 years old, he was well versed in the difference in trains, and he took his choice between waiting for a delayed passenger train and riding on the freight train by permission of the brakeman.

Frank Black not being a passenger, the company was not liable for the assault made upon him by the brakeman, there being no evidence that in doing so the brakeman was in the discharge of a duty incident to his employment.  Railway v. Anderson, 82 Texas, 516.

The District Court and Court of Civil Appeals erred in holding that Frank Black was a passenger on the train, for which error the judgments of both courts are reversed and the cause is remanded to the District Court for further trial in accordance with this opinion.

*Reversed and remanded.*

Delivered June 18, 1894.