## VASSOR v. RAILROAD.

(Filed September 18, 1906).

*Railroads—Freight Trains—Authority of Freight Conductors —Employees—Passengers—Burden of Proof—Passes.*

1. A railroad company, in the exercise of its right to classify its trains, may operate trains exclusively for carrying freight, and when it has done so, no person has a right to demand that he be carried upon such trains as a passenger.

2. Before a person can enter upon a freight train and acquire the rights of a passenger, he must show some contract made with some servant or agent of the corporation authorized, by express grant or necessary implication growing out of the nature of the employment, to make such contract.

3. A conductor in charge of defendant's freight train upon which plaintiff was injured had no authority to establish any contractual relation between plaintiff and the defendant corporation either as passenger or servant, and impose any duty upon defendant, the breach of which, followed by injury, gave a cause of action.

4. A conductor of a freight train has no authority, save in case of an emergency, to employ servants to assist in operating his train, and the burden is not upon the railroad to show that he had no such authority.

5. In an action for personal injuries, the fact that several months after the injury the defendant issued to the plaintiff a pass, describing him as an injured employee, does not tend to show any ratification of the attempted employment by the freight conductor.

CLARK, C. J., dissenting.

ACTION by Jack Vassor against Atlantic Coast Line Railroad Company, heard by *Judge T. J. Shaw* and a jury, at the Spring Term, 1906, of the Superior Court of NORTHAMPTON.

Action for personal injury sustained by plaintiff while on defendant's freight train. The plaintiff testified that on 26 May, 1902, he boarded defendant's local freight, running from Rocky Mount to Richmond, at Garysburg, N. C. He then described the circumstances under which he went upon

the train. "As I was going to Richmond I asked the conductor on the train if I could come back with him the next day on his train. Captain Moody had charge of the train going to Richmond. He said, 'Yes.' I was to help unload freight and load freight. I went to Richmond to take another man's run. He told me he would give me his place for ten days. He was a brakeman. I was expecting to get his place that night and come back next day. Did not get it, as he decided not to give it to me. I got on train between Richmond and Manchester after it started. I did not see conductor that day. Could not say he was on that day. It was the same train that I went to Richmond on, known as No. 90. Captain Moody was conductor on train that blew me up. The train stopped in Manchester yards, when I got on. William Savage was there. I got on flat-car not loaded, next to car loaded with barrels. Box-car behind us. The conductor did not know whether I was on train or not. I saw engineer, fireman and first brakeman when I got on train day I was hurt, but did not speak to any one except Savage. The train was local freight; passed Garysburg every day coming and going. I could see it. Same train Mr. Gwaltney was engineer on. He saw me on the train. Two of the brakemen saw me, but did not speak to but one of them. He told me to get on and help unload barrels at next station, Clopton. The brakemen unloaded the car. The engine exploded not more than ten minutes after I got on the car."

There was testimony in regard to the extent of injury and value of services. Plaintiff offered to introduce pass issued by defendant 16 September, 1902, to plaintiff as an "injured employee" from Richmond to Garysburg.

Upon defendant's objection, it was excluded. Plaintiff excepted. Upon the conclusion of plaintiff's evidence defendant moved for judgment of nonsuit. Motion allowed, and plaintiff appealed.

---

VASSOR *v.* RAILROAD.

---

*Peebles & Harris* for the plaintiff.

*Day & Bell, T. W. Mason* and *Murray Allen* for the defendant.

CONNOR, J.; after stating the case: The correctness of his Honor's ruling depends upon whether the defendant sustained any contractual relation to the plaintiff from which a duty arose to him. The testimony presents no question of public duty or duty to the public as discussed in *McNeill v. Railroad,* 135 N. C., 682, and other cases in which persons were permitted to go upon passenger trains or mixed trains on which passengers were taken.

It is too well settled to call for the citation of authority that a railroad company has the right to classify its trains and assign to them such service as is reasonable. That in the exercise of this right it may operate trains exclusively for carrying freight; and that when it has done so no person has a right to demand that he be carried upon such trains as a passenger. It is equally well settled that before a person can enter upon such a train and acquire the rights of a passenger he must show some contract made with some servant or agent of the corporation authorized to make such contract. Such authority may be shown either by express grant or necessary implication growing out of the nature or character of the employment. In view of these general and well-settled principles the question arises, whether the conductor, Moody, in charge of the freight train upon which plaintiff was injured had any authority to establish any contractual relation between plaintiff and the defendant corporation, either ·as passenger or servant, and impose any duty upon defendant, the breach of which, followed by injury, gave a cause of action.

The plaintiff insists that by the permission granted him to go upon the train to Richmond and return he became a passenger, or, if he is in error in this, he was by the agreement with the conductor made the employee or servant of the cor-

poration. For the purpose of disposing of this appeal it is not important or even necessary to discuss the question whether he became a passenger or an employee, because if he was, at the time of the injury, either, his right to go to the jury on the question of negligence would be the same. We are of the opinion that he was neither a passenger nor an employee.

Assuming, for the purpose of the discussion, that the conductor undertook to employ plaintiff, and that such employment extended to the return trip, the question of power is presented. Elliott in his work on Railroads, says: "The authority of the conductor ordinarily extends to the control of the movement of his train and to the immediate direction of the movement of the employees engaged in operating the train. * * * His authority does not, ordinarily, extend to making contracts on behalf of the company, but there may be cases of urgent emergency when he may make a contract for the company. He is to administer the rules of the company rather than make contracts for it. * * * The conductor has no general authority to make contracts on behalf of the company, but he may in rare cases of necessity, when circumstances demand it, bind the company by such contracts as are clearly necessary to enable him to carry out his prescribed duties." Elliott on Railroads, 302. In *Eaton v. Del., L. & W. Railroad,* 57 N. Y., 382, it is said: "It is fallacy to argue that a conductor is a general agent for this purpose, assuming that his power would, as a rule, place him under the class of general agents; he only holds that position for *the management of a freight train.* The fact that the same word, 'conductor,' is used to designate servants in two kinds of business, which the defendant has made perfectly distinct, tends to confusion. There is no real analogy between the duties of a conductor of a passenger train and those of the manager of a strict freight train. A different class of men would naturally

be employed in the two cases. The defendant has a right to assign specific duties to the one distinct from those performed by the other. It is a familiar rule in such a case that an agent cannot increase his powers by his own acts; they must always be included in the acts or conduct of the principal. No act of a conductor of a freight train will bind the company as to carrying passengers, unless the principal in some way assents to it." In the same case it is said: "The employment of brakemen is no part of the ordinary duty of a conductor. The company gave him no power to make any arrangement of the kind. * * * It is not one of those cases where he has an apparent authority, including the act in question, but owing to a secret fact does not have it in the particular case." In Baldwin on Railroads, 248, it is said: "While he may at times have occasion to make or construe, or even vary contracts of the company, that is not his chief office. He holds, however, a somewhat analogous position to that of a shipmaster. The owners of the railroad have put him in charge of the persons and property on board his cars. In case of emergency, when prompt action, if any, must be taken to protect the interests confided to his care, his ordinary powers would become greatly enlarged." In *Files v. Boston & Albany Railroad,* 149 Mass., 204, it is said: "In the case at bar the conductor had no general authority, so far as shown, to take passengers on the locomotive engine, or any special authority to take the plaintiff. The conductor was not only in charge of a freight train, but on a road intended solely for the transportation of freight. The locomotive engine was obviously not intended for passengers, and he had in his charge no vehicle, nor any part of a vehicle, in any way adapted for passengers. In riding for his own convenience in a place where it was not safe or prudent to ride, the plaintiff took on himself the risks of so doing, whether he did so by the license or on the invitation of the conductor. It was not within the apparent scope

of the freight conductor's authority to permit persons to ride on his freight train, far less on the locomotive engine thereof; nor can the fact that he had allowed the plaintiff to do so at a previous time, and also that the local freight agent and a conductor were known by the plaintiff to have ridden on the locomotive engine, make the defendant responsible for acci-dents which occurred thereby." To the same effect are *Smith v. L. E. St. L. Railroad Co.,* 124 Ind., 395; *Gardner v. N. H. Railroad Co.,* 51 Conn., 143. In *Texas & Pacific R. R. Co. v. Black,* 87 Texas, 160, the question was discussed at length, and it was said: "If the conductor of a freight train, made up of cars suitable only for carrying freight, can, without authority of the railway company expressly or tacitly given, receive passengers upon such train and bind the railway for the risk of transportation, a conductor of a passenger train may with equal propriety load the coaches of his train with cotton or grain, and make the company liable as a common carrier of freight."

The distinction between the powers and rights of the conductor of a freight train and of a passenger train are clearly pointed out in the opinion in this case. It is, however, suggested that the burden would be upon the defendant to show that the conductor had no authority to make the contract of service. The authorities are to the contrary. In *Eaton v. Railroad, supra,* it is said: "There is nothing in the business of a conductor which would lead to the conclusion that he had authority to make contracts with persons to act as brakemen. His apparent duties are to carry forward a train after it is organized. The business of organizing it is, in its nature, wholly distinct. It is, in fact, committed to a train dispatcher. Under such circumstances there is no act on the part of the defendant by which he can be estopped from showing the conductor's real authority any more than a commercial house would be if one of its travelers, in the course of

a journey, assumed to hire a clerk to do business for his employers at home."

In *Purple v. Railroad,* 114 Fed. Rep., 123, same case, 57, L. R. A., 700, *Sanborn, C. J.,* says: "In the absence of any rule or practice permitting freight trains to carry passengers, the presumption is that one riding for his own convenience on a freight train, an engine, a hand-car or any other carriage of a common carrier that is evidently not designed for the transportation of passengers, is unlawfully there and is a trespasser."

In *Cooper v. Lake E. & W. R. R.,* 136 Ind., 366, *Howard, C. J.,* said: "While the conductor and brakeman were in charge of the train, it does not appear that they had any authority to employ assistance in its management. No emergency is shown for the employment of the appellant. * * * No custom, rule or regulation of the appellee company is shown by which the appellant might pay his way by working on the train, assisting the brakeman or other employee * * * At most, the appellant was upon the train by the sufferance of the conductor and brakeman, who were themselves without authority to receive him. Any dangers to which he might become exposed were wholly at his own risk. The company would be liable only for wilful injury to him."

In *Powers v. B. & M. Railroad,* 153 Mass., 188, in an opinion of *Mr. Justice Devens,* it is said: "It was held in *Wilton v. Middlesex Railroad,* 107 Mass., 108, that the invitation there given by the defendant's servant to the plaintiff to ride on the horse-car which the servant was driving was within the general scope of his employment, and even if it was contrary to the instructions of the driver, she was not a trespasser. In the case at bar the plaintiff was not on a passenger train, and he was riding in the caboose of a freight train, in a place which he could not have failed to know was not intended or adapted for the use of passengers, but solely

for the accommodation of the defendant's employees engaged
in managing the train. Even if, therefore, the plaintiff had
an invitation from the conductor of the freight train, he
could not have supposed that the conductor was acting within
the general scope of his employment, or that, independently
of any rules of the corporation, the conductor had any author-
ity to extend such an invitation. The ordinary business of
conducting and managing a freight train does not involve any
right to invite persons to ride upon such trains, or to accept
them as passengers."

In *Eaton's case, supra, Dwight, C. J.,* speaking of a con-
tention similar to that of plaintiff's, says: "The contention
of the plaintiff must go to the length of maintaining that the
company was bound by the act of the conductor to take the
plaintiff into its service.  *  *  *  The conductor's author-
ity to carry can only be incidental to his power to make a
valid engagement for the plaintiff's service. The admission
of such a doctrine would subvert familiar rules of the law of
agency." We have been unable to discover any authority in
which it is held that a conductor of a freight train has any
power, save in case of an emergency, to employ servants to
assist him in operating his train.

We do not deem it necessary to consider the liability of the
defendant if there had been wanton or wilful injury, there
being no evidence of either. It is said that the case should
have gone to the jury. This suggestion is based upon the
theory that there was evidence of a contractual liability im-
posing upon the defendant the measure of duty prescribed for
either a passenger or employee. As we have seen, neither
relation existed. There was, therefore, no question to be sub-
mitted to the jury. The plaintiff having failed to lay the
basis upon which any such duty arose, there was no inference
to be drawn from the testimony by the jury. The effect of
the agreement made between plaintiff and conductor was for

the Court. There is no uncertainty as to its terms or legal signification. As was said in *Eaton's case, supra,* "The solution of the questions at issue is not to be sought in the rules of law appertaining to common carriers. It must be obtained from the principles of the law of agency. The true inquiry is, whether the conductor, as an agent of the defendant, had the power to take the plaintiff upon the train in such a way as to bind the defendant as a carrier to him as a passenger"— and, we may add, "or an employee." The answer to this question being in the negative, and there being no evidence of wanton or wilful injury, his Honor correctly directed judgment of nonsuit. We find no error in the ruling of his Honor excluding the pass. The fact that several months after the injury the defendant issued to the plaintiff a pass from Richmond to Garysburg, describing him as an injured employee, does not tend to show any ratification of the attempted employment by the conductor. The exception cannot be sustained.

No Error.

HOKE, J., concurring: I concur in the disposition made of this case, for the reason that it affirmatively appears from the testimony that the plaintiff at the time he was injured was neither a passenger nor employee of the company, and the facts disclose no breach of duty on the part of the defendant.

I do not assent to the position maintained in the principal opinion, as I understand it, that when a conductor of a freight train employs an ordinary hand to assist him in its operation, and the hand while so engaged in the company's work is injured by the company's negligence, that a presumption exists that the employment is without authority and the burden is on the injured employee to show the contrary. A conductor of a freight train is necessarily given very extended authority over a train under his control while being operated on the road away from the general offices of the company, and fre-

quently without present means of communication with them. He has under such circumstances the general right to employ a hand whenever it becomes necessary in the proper management of his train, and he must from the nature of the case be given very large discretion in determining when such necessity exists.

There are so many and various cases where the power may arise that I think when a conductor does employ a hand who engages in the company's work, there should be a presumption that he is acting within the scope of his authority till the contrary is made to appear; and at times such authority will be implied as a matter of law.

The decisions cited in the principal opinion are chiefly cases where the question was on the authority existing in the conductor of a freight train to confer on an injured party the position of passenger on his train, and the power of such conductor to employ help in the operation of his own train was in no way involved. While not directly in point, I think the position here contended for finds support in two well-considered decisions: *Sloan v. Railway,* 62 Iowa, 736; *Railway v. Propst,* 83 Ala., 525. In the first case, and on this question, *Seevers, J.,* for the Court, says: "It is said that the plaintiff was not an employee of the receiver, but an intermeddler, and therefore he cannot recover. The undisputed facts are that one Voorhees was a brakeman in the employ of the receiver, and he desired to have a rest for a week or more, and the plaintiff took his place on the train with the knowledge and consent of the conductor, on the first day of July, and continued to perform the duties of brakeman until the sixth day of said month, when he was ordered by the conductor to perform the duty in discharging which he was injured. The conductor testified that to properly manage the train two brakemen were required, and that there was but one other on the train besides the plaintiff. This evidence is not controverted. It does not

clearly appear that the receiver or any of his employees, other than those on the train, had knowledge that the plaintiff was acting as brakeman. An intermeddler is a person who officiously intrudes into a business to which he has no right. The distinction between an intermeddler and a trespasser is not in any case very great. Under the circumstances of this case, if the plaintiff was an intermeddler, he was a trespasser. But, as he was on the train, and discharged the duties of brakeman for six days with the knowledge and consent of the conductor, he was not either. The train, when passing between stations and distant from any other officer, is in charge of the conductor, and he has authority to eject such persons therefrom. So far from so doing, the conductor availed himself of the services of the plaintiff and required him to perform duties which were necessary and essential to the safe operation of the train. The regular brakeman was absent, and it is immaterial whether with or without cause. The conductor consented that the plaintiff should perform his duties. We think, when the regular brakeman is absent and the proper and safe management of the train so requires, the conductor has the authority to supply the place of the absent brakeman, and for the time being such person is an employee of the conductor's principal. Of necessity, it seems to us, the conductor must have such authority."

In the second case, *Stone, C. J.,* for the Court, says: "The conductor testified that he had no authority from the superintendent or from the defendant to engage or utilize the services of the plaintiff in the capacity of brakeman. Express authority for this purpose was not necessary. The circumstances themselves, about which there is no conflict of testimony, gave him the authority. In such an emergency, there must be discretion and authority somewhere to supply the place of disabled or missing servants, and no one could exercise this power so well or so prudently as the conductor in charge of

the train. We will therefore treat the plaintiff as the lawfully employed servant of the company."

I am of opinion that when the conductor of a freight train employs an ordinary hand to assist in the operation of his train, the presumption should be that his act is rightful till the contrary is made to appear. And in many instances such hiring being within the scope of his apparent authority, will conclusively bind the company so far as third persons are concerned, who act without notice.

CLARK, C. J., dissenting: Stephen Vassor, the plaintiff's minor son, was injured by the explosion of the engine on defendant's train, whereby he "lost both feet, one leg being cut off below and the other above the knee, one of his legs being broken in three places; his arm was cut and two holes knocked in his head." These injuries being caused by an explosion, there is a presumption of negligence, which always arises when the injury is caused by a collision, derailment, or explosion. In such cases, the doctrine of *res ipsa loquitur* applies. The only question, therefore, which arises on this motion to nonsuit is whether the relation of the injured party to the defendant was such that, taking the plaintiff's evidence to be true and in the aspect most favorable to him, was the defendant liable to plaintiff for the injury caused by its negligence, when it was not a wanton or wilful act?

The evidence of the injured boy is that, with permission of the conductor of the freight train, he went to Richmond to take the place of a hand working for the defendant; that not getting the place, he started home the next day on the same train. He testified: "The conductor said 'Yes' when I asked him if I could come back with him. I was to help unload freight and load freight. We had some barrels to unload at Clopton, and me and two brakemen got aboard second car so we could unload them quickly when train got there. The engine exploded not more than ten minutes after

I got on the car. The engineer and fireman saw me after I got on the train. They were looking at me when I got on." This evidence must be taken to be true, with the most favorable inferences to be drawn from it. The injured boy was certainly not a trespasser. He was on the car by the express permission of the conductor, the supreme representative of the company on that train. He was there with the tacit consent of the engineer and fireman, and was there under an agreement that he was to help load and unload freight. It is immaterial whether he was passenger or employee. The defendant owed him the duty not only to refrain from wilfully and wantonly injuring him, as in the case of a trespasser, but not to injure him by its negligence. This was the ruling laid down in the rehearing of *McNeill v. Railroad,* 135 N. C., 718. The plaintiff's pass, it is there said, "had expired, if it had ever legally existed." The conductor permitted him to travel in violation of a statute without any payment of fare or promise to pay; the injury was not caused by any wilful or wanton act, yet the defendant was held liable. Here the conductor also permitted the injured party to ride free, but not illegally nor without pay. The explosion occurred in Virginia, where it is not shown that free passage was prohibited; besides, the boy, who was so badly injured by the defendant's negligence, was not riding really free, but was either by agreement paying his way by loading and unloading freight or was an employee receiving pay for his work by getting transportation. Besides, when the injured man was discharged from the hospital, the defendant's superintendent gave him a pass home, styling him "an injured employee." This was a declaration against interest and was erroneously excluded. It should have been submitted to the jury together with the other evidence.