# St. Louis & San Francisco R. R. Co. v. Hunt.

### Breach of Contract of Employment.

(Decided November 19, 1912.  60 South. 530.)

1. *Railroads; Discharge of Servant; Conductor; Power.*—Where the fireman of a freight train left the employment of the company at a small station, leaving the train without a fireman and out on the road, such an emergency existed as to make the conductor the agent of the master with authority to discharge one of his crew who refused to take the fireman's place.

2. *Master and Servant; Employment; Breach.*—A master may, at any time, put an end to a contract of service or employment, but in the absence of a sufficient legal excuse for so doing, the servant is entitled to damages for breach of the contract.

3. *Same; Damages.*—A contract of employment of a railroad with its brakemen involves no public duty and where such brakeman is discharged and ordered to quit the train, and there is no injury to his person, he is not entitled to exemplary damages or damages for mental suffering, but is only entitled to such damages as will compensate for the breach of the contract of employment.

APPEAL from Jefferson Circuit Court.

Heard before Hon. E. C. CROWE.

[St. Louis & San Francisco R. R. Co. v. Hunt.]

Action by Dan Hunt against the St. Louis & San Francisco Railroad Company in tort and assumpsit, for breach of contract. Judgment for plaintiff and defendant appeals. Reversed and remanded.

CAMPBELL & JOHNSON, for appellant. The demurrers should have been sustained to the four counts of the complaint.—38 Cyc. 418-427; *L. & N. v. Hines,* 121 Ala. 234; *W. U. T. Co. v. Krishbaum,* 132 Ala. 539; *Mobile L. I. Co. v. Randall,* 74 Ala. 170; *Newton v. Brooks,* 134 Ala. 269. The count ex contractu would not support a recovery of punitive damages.—*W. U. T. Co. v. Rowell,* 153 Ala. 295. Damages for mental pain and anguish were not recoverable.—*B. W. Wks. v. Ferguson,* 164 Ala. 494; *Same v. Vinter,* 164 Ala. 490. On these authorities it must be held that the court was in error in its oral charge and was also in error in refusing the charges requested by defendant.

R. D. COFFMAN, B. C. BURKHALT, and GASTON & PETTUS, for appellee. No brief reached the Reporter.

PER CURIAM.—In this case the fireman, without fault on the part of the conductor, left the engine at a time when a part of the train of cars—it was a freight train—was on the main line and the other part on a side track at Townley, a station 50 miles west of Birmingham. The crew of the train consisted of the conductor, the fireman who had left the train, two brakemen, the engineer, and a flagman. The train was on its way to Birmingham. Townley is evidently a place of minor importance, and the services of a fireman could not be obtained at that point unless, indeed, the conductor had induced the fireman who had left his engine to go back on the engine and resume his duties. This the conductor did not do.

Dan Hunt, the appellee, was one of the brakemen, and, accepting his testimony as true, while he was not a fireman, he had at times been on an engine and helped the fireman to "scoop coal into the furnace" and necessarily, therefore, knew *something* of the work which a fireman has to do.  The testimony is silent as to whether the other brakeman knew anything whatever about the duties of a fireman, and the conductor testifies that he did not know whether the front brakeman, Jess Mc-Cain, knew how to fire an engine or not, but that he *did* know that appellee, Dan Hunt, knew how to do it.

The above being the situation, an *emergency* existed which required prompt action on the part of appellant. While the train was a freight train, the law requires a common carrier, in and about the transportation of freight, to act with reasonable dispatch, and as the main line of the railroad was obstructed by a part of the train, it became the duty of appellant to clear that line of the obstruction to the end that the lives of travelers should not be endangered and the freight and passenger service of appellant should not be interfered with. There was evidence tending to show that on appellant's road it was the custom for the "front" brakeman (the position occupied by Jess McCain) to supply the place of the fireman in case of such an emergency as above existed, and that it was not the custom for the "swing" brakeman (the position occupied by appellee) to supply the place of the fireman.   The evidence shows, without dispute, that the conductor, in this emergency, ordered the appellee to get on the engine and act as fireman, that appellee refused to obey that order, that when he did so the conductor told him to get "his things and get off," and that appellee complied with that order and left the train.   The evidence further tends to show that appellee applied to the station agent at Townley

[St. Louis & San Francisco R. R. Co. v. Hunt.]

for a pass into Birmingham, but that none was furnished him, and that, being without money, he borrowed $1.37½ from Jess McCain, bought a ticket, and went into Birmingham on a passenger train. The passenger train reached Birmingham before the arrival of the freight. It further appears that when appellee left the train Jess McCain, the other brakeman, also left it, and that when the train left Townley the conductor was acting as engineer, the engineer as fireman, and the flagman as conductor, flagman, and brakeman.

1. There are four counts to the complaint, and they claim all the damages which the appellee alleges he sustained, both actual and vindictive, on account of the above acts of the conductor. The sufficiency of these counts was properly raised by demurrer, but we deem it unnecessary to consider the question as to the sufficiency vel non of either of them. It seems to us that certain well-known principles determine this controversy, and we prefer to discuss the propositions going to the merits of the case.

2. The conductor of a railroad train is its *master*, and upon him, in cases of emergency, the law, out of necessity, casts large authority over his subordinates. It must be remembered that while he is answerable to his superior, the railroad company, for all acts done by him while in charge of his train, it was necessary for the convenience and safety of the traveling public that he should possess all needed authority over the subordinates on his train to maintain proper discipline and respect for his orders. When an *emergency* arises, *quick* action is usually necessary. It is impossible for the general manager, the president of the company, or its board of directors to order *what* shall be done or *how* or *by whom* it shall be done. Some one, however, must be there to act, and the law says that, in an emer-

gency, the conductor becomes the railroad company itself. "In such cases the master—that is, the railroad company—must be regarded as constructively present, and some one must be regarded as invested with a discretion and a right to speak in its name. One thus speaking, although ordinarily a servant, may now have the authority of an agent. He may *have a right to give orders,* and, although ordinarily a servant with those whom he addresses, he is now elevated by necessity, to a higher position. He can *command* and they must *obey.*" American Railroad Law (Baldwin) p. 253, § 8; *Georgia Pac. Ry. Co. v. Propst,* 83 Ala. 518, 3 South. 764; 3 Thompson on Neg. § 3175; 5 Rapalje & Mock's Dig. Railway Law, p. 734.

Certainly the master, at any time, may put an end to a contract of employment for personal services. If he discharges his servant before the end of his term of employment and the discharge is for good and legally sufficient cause, the servant is without a right of action against the master for the damages suffered by him because of the *breach* by the master of the contract of employment. When therefore the conductor of appellant, clothed, by virtue of the emergency with which he was confronted, with the powers which the railroad company itself possessed in the premises, said to the appellee, "Take your things and get off this train," an end was put to appellee's contract of employment with appellant. The appellee—if indeed his contract of employment was by the *month,* as his testimony tends to show, instead of by the *day,* as appellant's testimony tends to show—so accepted his dismissal. He does not appear to have again offered his services to appellant under his contract. Appellant seems to so have regarded it, for it does not appear to have again offered further employment under the contract to appellee.

3.   Taking the facts, then, in their most favorable light to appellee, by what standard shall appellee's damages be measured if the contract of employment *was* breached by appellant for a cause not justified by the law?   While appellant is a public-service corporation and for that reason appellee, as one of its servants, discharging duties in which the public had an interest, owed to it a high degree of efficiency and prompt obedience to the lawful orders of his superiors while in the discharge of the service which he was employed to perform, the mere fact that appellee was in the *employ* of a public service corporation confers no greater rights upon him than if his employment had been by a private individual. · He was one of the instruments used by the railroad company in serving the public, and for his services he was being *paid by the railroad company.*   He was not a passenger—a member of the public—who had *paid* the company for the right to travel on its train. His rights simply grew out of the contract of employment which he had with appellant, and are to be determined by the general rules which apply to the breach by the master of a contract of employment of a servant.—*John Vassor v. Atlantic Coast Line R. Co.,* 142 N. C. 68, 54 S. E. 849, 7 L. R. A. (N. S.) 950, 9 Ann. Cas. 535.

4.   As above stated, the appellant owed appellee no duty as a member of the public.   It simply owed him the duty which every master owes to his servant who properly performs his duties under his contract of employment, viz., to perform his part of the contract, until, by the terms of the contract, the term of service is at an end.   Some of the counts of the complaint in this case are in tort; the last count is for a breach of the contract of employment.   Without taking the time to consider the question as to whether the appellee can

maintain, under any of the aspects of the facts of this case, an action of tort for the redress of his alleged grievance, his damages, if any, must be measured by the same standard, whether the form of the action be in tort or ex contractu.

In the present case the appellee's presence on the freight train grew out of his contract of employment. But for the contract of employment he would have had no right whatever on that train, and it is impossible to dissociate from the contract of employment the wrongs of which appellee complains. The contract of employment is the basis of every wrong for which appellee claims the right to damages.

Except in rare instances, the law will not permit the recovery of punitive damages for the mere breach of a contract or for the breach of a duty springing out of a contract. In this case, as we have already stated, there was no *public* duty resting upon appellant by virtue of its contract with appellee, there was no willful trespass against or injury to the person of appellee, and the trial court committed error in submitting to the jury the subjects of mental pain and anguish and of exemplary damages.—*Western Union Tel. Co. v. Westmoreland,* 151 Ala. 319, 44 South. 382; *B'ham Waterworks Co. v. Martini,* 2 Ala. App. 652, 56 South. 830; *W. U. Tel. Co. v. Rowell,* 153 Ala. 295, 45 South. 73.

5. The only question in this case is whether the appellant discharged the appellee from its service before the expiration of his term of service and without legal cause or excuse. It is not our purpose, in what we have above said, to intimate that under the facts of this case the appellant—accepting *its* testimony as true—when, through its conductor, it discharged the appellee, did so for legal cause. What we *do* determine is that, as the conductor, under the circumstances, had the *power*

[Southern Railway Company v. Ellis.]

to put an end to the contract and actually did it, the measure of appellee's damage, if he is entitled to recover, is that measure which the law has so long declared for the ascertainment of the actual damages suffered by a servant for the wrongful breach by the master of a contract for personal services. It is not necessary for us to repeat here the well-known rules governing such cases. See 6 Mayfield's Dig. p. 602, §§ 519, 520, 521, and authorities there cited.

Reversed and remanded.

NOTE.—The foregoing opinion was prepared by Judge DE GRAFFENRIED, while he was a member of this court, and is adopted by the court.